CHESAPEAKE UTILITIES CORPORA-
TION, a Delaware Corporation,
Plaintiff,

v.

CHESAPEAKE AND POTOMAC TELE-
PHONE COMPANY OF MARYLAND, a
corporation of the State of Maryland,
Defendant and Third-Party Plaintiff,

v.

TEAL CONSTRUCTION, INC., a Dela-
ware Corporation, and Bituminous Casu-
alty Corporation, Third-Party Defend-
ants.

Superior Court of Delaware,
New Castle County.

Submitted Nov. 1, 1978.
Decided March 30, 1979.

Richard E. Poole and Somers S. Price, Jr., of Potter, Anderson & Corroon, Wilmington, for defendant and third-party plaintiff.

Edmund D. Lyons and Edward M. McNally of Morris, James, Hitchens & Williams, Wilmington, for third-party defendants.

O'HARA, Judge.

This case is presently before the Court on the motion of Chesapeake & Potomac Telephone Company of Maryland ("Telephone") for summary judgment on its cross-claim against Teal Construction, Inc. ("Teal") and its third-party claim against Bituminous Casualty Corp. ("Bituminous"). Both claims are for indemnification pursuant to a contract between Telephone and Teal for certain construction work in Salisbury, Maryland. Teal obtained insurance and indemnity coverage required by the contract from Bituminous.

This action arose out of injuries sustained by the original plaintiffs, who were Teal employees, on March 17, 1970, when an explosion and flash fire occurred in a manhole owned by Telephone.* Original defendant Chesapeake Utilities Corp. ("Utilities Corp.") sued Teal and Telephone for contribution, and the third party defendants cross-claimed against each other. Original plaintiffs settled their case with Utilities Corp., and Utilities Corp. settled with Teal but not Telephone.

A motion by Telephone for leave to amend its third party complaint to add Bituminous as a party was granted on August 15, 1977, and an amended complaint was filed. Defendant Bituminous claims that this claim is barred by the three year statute of limitations. 10 Del.C. §§ 8106, 8121. The general rule is that a claim for indemnity based on tort does not accrue, and the limitation period does not begin to run, at the time of injury. Instead the claim accrues and the statute begins to run only when the cause of action for indemnity arises, or the indemnitee's liability is fixed and discharged. The determining factor is the point at which the indemnitee suffers loss or damage through payment of a claim after judgment or settlement. Anno., 57 A.L.R.3d 867 (1974).

This general rule is followed in Delaware. *United States Fidelity & Guarantee Co. v. Gray's Adm'rs,* Del.Super., 97 A. 425 (1916). In that case this Court found that a cause of action in favor of a surety against the estate of the deceased arose upon payment by the surety and not before. In a concurring opinion, Chief Justice Pennewill stated that:

"In such case the cause of action could not accrue until the money was paid by the indemnitor, certainly not until notice and demand. A cause of action cannot accrue before there is a right and power to enter suit, and the indemnitor could not enter suit until it knew what the loss was." 97 A.2d at 427.

Likewise, under Maryland law, a cause of action under a contract of indemnity does not accrue until liability is fixed by entry of judgment against the indemnitor. *Levin v. Friedman,* Md., 271 Md. 438, 317 A.2d 831 (1974). An action by way of third party complaint is governed by the same rule.

Telephone has not suffered a loss related to the manhole incident either through payment or adverse judgment. Therefore, the statute of limitations has not yet begun to run, and its claim against Bituminous is not barred.

* For factual background see *Hopkins v. Chesapeake Utilities Corp.,* Del.Super., 290 A.2d 4 (1972).

The principal legal issue facing the Court at this time is whether, as a matter of law, the contract between Telephone and Teal can be interpreted to create a duty on the part of Teal to indemnify Telephone for Telephone's own negligence. The stage was set for this inquiry in a previous opinion, dated May 27, 1977. This Court interpreted Article IV, ¶ 2 of the contract ** as imposing three conditions before that clause would operate to require indemnification. Two of the conditions were seen as fulfilled by the filing of suit against Telephone (by Utilities Corp.). The third condition, that the injury, loss, or damage result from "an act, failure to act, faulty work, imperfect construction, or negligence of Teal, its agents, or employees of either", raises the question now before the Court. Maryland law is to be applied to determine whether the "third condition" of the indemnification clause has been met.

 In construing the contract and in ruling on Telephone's motion, the facts are to be regarded in a manner favorable to Teal and Bituminous, the non-moving parties. The crucial factual dispute related to the motion is whether negligence on the part of Telephone contributed to the injuries suffered by the Teal employees. Under the Teal/Bituminous view of the facts, Telephone's inspector at the construction site failed to furnish a test device for combustible gas as specified by the contract, and failed to enforce the contract provision requiring testing of manholes for gas prior to entry. The record can be read to support this view. For the purposes of this motion, these allegations, pointing to negligence on the part of Telephone, must be accepted as true. Thus, in order for summary judgment to be granted, Telephone must establish as a matter of law that the indemnification contract was intended to include within its coverage the negligence of Telephone.

Telephone argues that the broad language of the indemnification clause of the contract can be read to indemnify Telephone against its own "passive" or "secondary" negligence. Telephone argues that the contract should be read as a whole, and points to Teal's control over the job site and broad contractual responsibilities. Teal and Bituminous reject the active/passive distinction and argue that there is no language in the contract extending its coverage to Telephone's negligence.

 Maryland follows the general rule that an indemnity contract will be strictly construed against the indemnitee, in this case Telephone. *Farrell Lines v. Devlin,* Md., 211 Md. 404, 127 A.2d 640 (1956). Further,

"contracts will not be construed to indemnify a person against his own negligence unless an intention so to do is expressed in those very words or in other unequivocal terms." *Crockett v. Crothers,* Md., 264 Md. 222, 285 A.2d 612 (1972).

In *Chesapeake & P. Tel. Co. of Md. v. Allegheny Const. Co.,* D.Md., 340 F.Supp. 734 (1972), the Court dealt with an indemnification clause essentially similar to that before the Court. It read:

"It is understood and agreed that in the performance of this AGREEMENT the CONTRACTOR shall be and remain in all respects an independent CONTRACTOR and shall hold TELEPHONE COMPANY harmless from any and all claims, demands, and liability on account of its violation of any ordinances, statute, or regulations, or on account of the injury, loss or damage, to any person or property arising from said work, or from any act or negligence of CONTRACTOR or any of its workmen, and CONTRACTOR hereby assumes all responsibility and liability in any and all of said contingencies. CONTRACTOR shall also be responsible for and hold TELEPHONE COMPANY harmless from all damage due to imperfect construction."

The District Court, which applied Pennsylvania law but also discussed Maryland law,

** "THE CONTRACTOR [Teal] shall indemnify and hold TELEPHONE COMPANY harmless from any and all claims, demands, damages or liability due to the injury, loss or damage to any persons or property; including materials of TELEPHONE COMPANY, which results from any act, failure to act, faulty work, imperfect construction, or negligence of CONTRACTOR, its agents, or employees of either." ARTICLE IV, ¶ 2.

found that this clause failed to affirmatively and specifically provide that the indemnitor would hold the indemnitee harmless for the indemnitee's own negligence. The broad, inclusive "words of general import" ("all claims," "any persons," "any act") were disregarded and reference was made to the balance of the agreement. In the absence of a clear expression of intent to indemnify for the indemnitee's negligence, the contrary was presumed. The Court found nothing to rebut that presumption, indicating that on the contrary the undertakings of the indemnitor involved only its own acts and omissions, and not those of the indemnitee. The Court concluded that under Maryland law no different result would obtain.

Telephone urges this Court to follow the lead of the California Supreme Court, which has held that an indemnity clause which fails to address itself to the issue of an indemnitee's negligence may be construed to provide indemnity for a loss resulting in part from an indemnitee's "passive" negligence. *Rossmoor Sanitation, Inc. v. Pylon, Inc.*, Cal.Supr., 13 Cal.3d 622, 119 Cal.Rptr. 449, 532 P.2d 97 (1975). This is so despite California's adherence to the rule that agreements providing for indemnification against an indemnitee's own negligence must be clear and explicit. Apparently, the rule is applied only to "active" or "primary" negligence on the part of the indemnitee. Telephone insists that Maryland has recognized this active/passive distinction in *Farrell Lines v. Devlin, supra*.

Mention *is* made of the passive/active distinction in *Farrell*. However, a close reading reveals that the reference was made in the course of a discussion of the negligence of the alleged indemni*tor*, not the indemni*tee*. The Court had already concluded that there was no express agreement to indemnify, and thus no liability for the negligence of the indemnitee. The Court found that Atlantic, the alleged indemnitor, had agreed only to insure against liability on the part of Farrell for damages attributable to Atlantic's operations. Farrell claimed that this was an implied agreement by Atlantic to indemnify Farrell against the primary negligence of Atlantic. The trial Court had submitted to the jury the issue of whether Atlantic was primarily or secondarily negligent, if at all, and the Court of Appeals merely approved this resolution of the implied indemnity question. While it may be possible to say that Maryland "recognizes" the active/passive dichotomy, it must be stressed that the context of "recognition" was distinct from *Rossmoor Sanitation, Inc. v. Pylon, Inc., supra*, and the present case. There is no suggestion in *Farrell* that the Maryland Court would apply the active/passive or primary/secondary distinction to the negligence of the *indemnitee* as was done in *Rossmoor*.

This Court has found no indication that Maryland would be willing to depart from its previous stance on this issue, and recognize an exception to the "express words/unequivocal terms" rule in the case of passive negligence of the indemnitee. This is not to ignore the apparent trend away from such strict construction in appropriate instances. See Anno., 27 A.L.R.3d 663 (1969). However, it should be noted that even in cases recognizing the distinction, the question of whether an indemnitee's conduct constitutes active or passive negligence is ordinarily a jury question. *Rossmoor Sanitation, Inc. v. Pylon, Inc., supra*.

In summary, the Court finds that Maryland would not interpret the present contract to cover the negligence of the indemnitee, which must be assumed to exist for the purposes of this motion. The motion of Telephone for summary judgment on its cross-claim is, therefore, denied. However, the contract clearly indemnifies Telephone against the negligence of Teal. Thus, if the negligence of Telephone could be ruled out, Teal (and Bituminous) would face liability for any loss suffered by Telephone covered by the contract terms.

For the reasons herein set forth, Telephone's motion must be denied.

IT IS SO ORDERED.