724 F.Supp. 279 (1989)
Said AZARBAL and Diana Azarbal, Administrators of the Estate of Sima Ashley Azarbal; Said Azarbal and Diana Azarbal, Individually, Plaintiffs,
v.
The MEDICAL CENTER OF DELAWARE, INC., a corporation of the State of Delaware; J. Joaquin Palacio, M.D., P.A., a Delaware professional association, and J. Joaquin Palacio, M.D., Defendants.
Civ. A. 88-451-CMW.
United States District Court, D. Delaware.
November 7, 1989.
*280 Ben T. Castle, and Melanie K. Sharp, of Young, Conaway, Stargatt & Taylor, Wilmington, Del., for plaintiffs.
John A. Parkins, Jr., of Richards, Layton & Finger, Wilmington, Del., for defendant, The Medical Center of Delaware, Inc.
John A. Elzufon, and Marla F. Dufendach, of Elzufon & Associates, P.A., Wilmington, Del., for defendants J. Joaquin Palacio, M.D. and J. Joaquin Palacio, M.D., P.A.

OPINION
CALEB M. WRIGHT, Senior District Judge.
This action is a medical malpractice and wrongful death suit brought in 1988 by Said and Diana Azarbal, both individually and as administrators of the estate of Sima Ashley Azarbal, against Dr. J. Joaquin Palacio[1] and the Medical Center of Delaware.[2] The original complaint alleges that the defendants' negligence resulted in injury to and ultimately the death of plaintiffs' daughter. The plaintiffs now move to amend their complaint. This court has jurisdiction pursuant to 28 U.S.C. § 1332(a)(1).

FACTUAL BACKGROUND
On August 12, 1986, Dr. Palacio performed an amniocentesis on Diana Azarbal at the Medical Center of Delaware. Amniocentesis is a procedure performed on a pregnant woman whereby a physician inserts a needle through the woman's abdominal wall into the amniotic sac containing the fetus. The physician then removes some amniotic fluid and studies it. See 1 J.E. Schmidt, M.D., Attorneys' Dictionary of Medicine and Word Finder A-175 (1986). The plaintiffs allege that the needle the doctor used for the procedure entered the skull of the fetus. On January 23, 1987, the baby was delivered at the Medical Center by a caesarian section performed by Dr. Palacio. Immediately following the delivery, Dr. Palacio performed a tubal sterilization on Ms. Azarbal.[3] The baby was born with brain damage, and died on August 21, 1987.
Plaintiffs filed their complaint in this action on August 12, 1988, exactly two years after the amniocentesis was performed. *281 The complaint alleges that the defendants were negligent in the performance of the amniocentesis.[4] The complaint seeks damages for the child's injuries and for the parents' injuries resulting from the child's illness and death. On April 10, 1989, the plaintiffs filed this motion to amend the complaint. Plaintiffs seek to amend the complaint in six respects. First, the plaintiffs seek to add a claim against Dr. Palacio for failing to obtain the informed consent of Ms. Azarbal prior to performing the amniocentesis. Second, the plaintiffs wish to claim that Dr. Palacio failed to obtain Ms. Azarbal's informed consent for the tubal sterilization. Third, the plaintiffs seek to add a punitive damages claim against Dr. Palacio stemming from the allegation of lack of informed consent to the sterilization. Fourth, the plaintiffs wish to allege that the Medical Center rendered negligent care to the infant after her birth in that the hospital failed to monitor, recognize, and treat the infant's condition. Fifth, the plaintiffs seek to make several minor, technical changes to the complaint. Sixth, the plaintiffs wish to clarify the claims they are making by distinguishing the claims brought as administrators of their daughter's estate from the claims brought as individuals.
For the reasons discussed below, this court will grant plaintiffs' motion to amend the complaint with the claim of negligent post-birth care by the hospital, but only as that claim relates to damages sought on behalf of the infant. The court grants plaintiffs' motion to amend in all other respects.

DISCUSSION
Rule 15(a) of the Federal Rules of Civil Procedure provides that leave to amend a complaint "shall be freely given when justice so requires." There is a general presumption in favor of allowing a party to amend its pleadings. Boileau v. Bethlehem Steel Corp., 730 F.2d 929, 938 (3d Cir.), cert. denied, 469 U.S. 871, 105 S.Ct. 221, 83 L.Ed.2d 150 (1984). A court may deny an amendment, however, if there has been undue delay by the movant, if there has been bad faith on the part of the movant, or if the opposing party would suffer undue prejudice as a result of allowing the amendment. Foman v. Davis, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962); Adams v. Gould, Inc., 739 F.2d 858, 864 (3d Cir.1984), cert. denied, 469 U.S. 1122, 105 S.Ct. 806, 83 L.Ed.2d 799 (1985). A court may also deny an amendment if the amendment would be futile in that it would not withstand a motion to dismiss. Massarsky v. General Motors Corp., 706 F.2d 111, 125 (3d Cir.), cert. denied, 464 U.S. 937, 104 S.Ct. 348, 78 L.Ed.2d 314 (1983); Satellite Financial Planning Corp. v. First National Bank, 646 F.Supp. 118, 120 (D.Del.1986); see Foman v. Davis, 371 U.S. at 182, 83 S.Ct. at 230; see also Middle Atlantic Utilities Co. v. S.M.W. Development Corp., 392 F.2d 380, 385 (2d Cir.1968) ("It is normally proper for the trial judge to consider the statute of limitations on a motion to amend. To delay until there is a later motion to dismiss because the claim is time-barred would be a wasteful formality.").
The defendants raise several objections to the proposed amendments. First, Dr. Palacio asserts that the proposed amendment regarding lack of informed consent to the amniocentesis would be futile in that it is barred by the statute of limitations. Second, Dr. Palacio contends that the proposed amendment regarding informed consent for the tubal sterilization would also be futile on statute of limitations grounds. Third, Dr. Palacio claims that the punitive damages claim would be futile in that the plaintiffs would be unable to establish the requisite state of mind. Fourth, the Medical Center alleges that there was an undue delay in raising the claim regarding postbirth *282 care; that the claim would result in prejudice to the Medical Center; and that the claim would be futile in that it is barred by the statute of limitations.[5]

LACK OF INFORMED CONSENT TO THE AMNIOCENTESIS
The court will first address the propriety of allowing the amendment alleging lack of informed consent to the amniocentesis.[6] Dr. Palacio contends that this amendment would be futile because it is barred by the statute of limitations. The limitations period for bringing medical malpractice actions is two years. Del.Code Ann. tit. 18, § 6856 (Supp.1988). Since the amniocentesis occurred more than two years before the motion to amend was filed, the informed consent claim would be barred were it not for Federal Rule of Civil Procedure 15(c). Rule 15(c) states that "[w]henever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading." Fed.R.Civ.P. 15(c).[7] Dr. Palacio does not dispute the fact that the informed consent claim arises out of the same transaction as the amniocentesis, and thus relates back to the date of the complaint. However, Dr. Palacio asserts that the claim would have been time-barred when the original complaint was filed because any informed consent should have occurred prior to the date of the amniocentesis, placing this claim just outside the two-year limitations period.
This court finds that the informed consent claim is not time-barred. In Williamson v. Gopez, 1986 WL 1270, the Delaware Superior Court noted that informed consent for a surgical procedure should have occurred on or before the date of the surgery. No. 83C-DE-23 at 6 (Del.Super. Jan. 10, 1986). The court stated that the two-year limitations period for the informed consent claim began to run on the date of the surgery. Id. The plaintiffs' informed consent claim in this case is thus not time-barred as it dates to exactly two years before the original complaint was filed.[8] Since the claim is not futile, this court will allow the plaintiffs to amend the claim to the complaint.

LACK OF INFORMED CONSENT TO THE STERILIZATION
Plaintiff's second proposed amendment is the claim that Dr. Palacio failed to obtain the informed consent of Ms. Azarbal prior to the sterilization. Specifically, the proposed amendment alleges that Dr. Palacio failed to inform Ms. Azarbal prior to the sterilization that her fetus had probably been injured by the amniocentesis. Dr. Palacio contends, however, that this amendment would be futile because it is barred by the statute of limitations.
*283 The sterilization occurred on January 23, 1987, just after the birth of Ms. Azarbal's baby. The amendment was filed on April 10, 1989, more than two years later, and thus would be time-barred based on that date. However, plaintiff seeks to have this claim relate back to the date of the original complaint so that it would fall within the two-year period. As stated above, a proposed amendment relates back to the date of the original pleading if it arises from the same conduct, transaction, or occurrence. Fed.R.Civ.P. 15(c). This court has held that the most important factor in determining if a proposed amendment relates back to a prior pleading is whether the earlier pleading gave the other party adequate notice of the occurrence forming the basis for the amended claim. Hill v. Equitable Bank, 599 F.Supp. 1062, 1071 (D.Del.1984). This court finds that the original complaint gave Dr. Palacio adequate notice of the basis of the claim regarding lack of informed consent to the sterilization. The lack of informed consent claim, like the claim set forth in the original complaint, involves Dr. Palacio's behavior with respect to the amniocentesis. The original complaint alleges that Dr. Palacio was negligent in performing the amniocentesis. The amended complaint alleges that Dr. Palacio was negligent after the amniocentesis in not telling Ms. Azarbal that the procedure had caused fetal injury, and sets forth a claim of lack of informed consent for the sterilization based on that negligence. This court believes the original complaint provided adequate notice of any claims Ms. Azarbal would have arising from the amniocentesis, including a claim that Dr. Palacio should have revealed that the procedure had caused fetal injury.[9],[10] The claim therefore relates back to the date of the original complaint and is not time-barred. The court will thus allow the plaintiffs to amend this claim to their complaint.

PUNITIVE DAMAGES CLAIM
Plaintiffs also seek to amend their complaint to allege a punitive damages claim against Dr. Palacio based on his failure to disclose to Ms. Azarbal the alleged problem with the amniocentesis. Dr. Palacio contends that this amendment should not be allowed because it is futile. Dr. Palacio believes the plaintiffs cannot prove that he had the state of mind required for a punitive damages claim.
Dr. Palacio is essentially arguing that the punitive damages claim would not withstand a motion to dismiss. Federal Rule of Civil Procedure 12(b)(6) provides that a complaint can be dismissed for failing to state a claim on which relief can be granted. In ruling on a dismissal motion, the court must accept all the well-pleaded facts of the complaint as true. See Satellite *284 Financial Planning Corp. v. First National Bank, 646 F.Supp. 118, 120 (D.Del. 1986). A court can dismiss a complaint for failure to state a claim only if it appears "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). This court finds that the proposed amended complaint does set forth a claim for punitive damages, and thus would withstand a motion to dismiss. The defendant's state of mind is a vital element in a punitive damages claim. Strauss v. Biggs, 525 A.2d 992, 999 (Del. 1987). Punitive damages are appropriate only when the defendant acted with an evil motive or with reckless indifference. See id. The amended complaint alleges that Dr. Palacio knew or should have known of the injury to the fetus prior to his performance of the sterilization. By alleging that Dr. Palacio may have had knowledge of fetal injury, the plaintiffs have sufficiently set forth a claim for punitive damages.[11]
Since this court has allowed the Azarbals to add the claim regarding informed consent for the sterilization, the court will also allow them to seek punitive damages based on that claim.[12]

NEGLIGENT POST-BIRTH CARE BY THE HOSPITAL
Plaintiffs also seek to amend their complaint with a claim that the Medical Center failed to monitor, recognize and treat the infant's condition immediately after her birth. The Medical Center raises three objections to the proposed amendment. The first objection is based on the plaintiffs' delay in asserting this claim. The Supreme Court in Foman indicated that undue delay is a basis for denying a motion to amend. See Foman v. Davis, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962). Both parties agree, however, that delay alone is an insufficient reason to deny leave to amend pleadings; the delay must unduly prejudice the nonmoving party. Cornell & Co. v. Occupational Safety and Health Review Comm'n, 573 F.2d 820, 823 (3d Cir.1978); Butcher & Singer, Inc. v. Kellam, 105 F.R.D. 450, 452 (D.Del.1984). Nonetheless, the Medical Center believes that undue delay can by itself raise a presumption against granting a motion to amend, and it cites a Seventh Circuit case so holding. Tamari v. Bache & Co., 838 F.2d 904, 909 (7th Cir.1988). While the Seventh Circuit may be correct, this court does not believe that the delay of eight months since the filing of the complaint is undue.[13] Thus the delay alone is an insufficient basis on which to deny plaintiffs' request to amend, and it raises no presumption against granting plaintiffs' motion.
The Medical Center's second objection to the proposed amendment is that the *285 hospital will suffer prejudice if the amendment is allowed. A motion to amend a complaint may be denied if the amendment would result in prejudice to the non-moving party. Cornell & Co., 573 F.2d at 823; see Foman v. Davis, 371 U.S. at 182, 83 S.Ct. at 230. To demonstrate prejudice, the non-moving party must show that it will be unfairly disadvantaged or deprived of the opportunity to present facts or evidence which it could have offered had the amendment been timely. Hill v. Equitable Bank, 109 F.R.D. 109, 112 (D.Del.1985).
The Medical Center's allegation of prejudice is that it may be precluded from asserting a claim for indemnity against the physician involved in the post-birth care because the two-year statute of limitations for medical malpractice claims has passed. See Del.Code Ann. tit. 18, § 6856 (Supp. 1988). This court finds the Medical Center's claim of prejudice unconvincing. The law in Delaware is that the statute of limitations on a claim for indemnity based on tort does not begin to run at the time of injury. Chesapeake Utilities Corp. v. Chesapeake and Potomac Telephone Co., 401 A.2d 101, 102 (Del.Super.1979). Rather, the limitations period begins to run only when the cause of action for indemnity arises, or when the indemnitee's liability is fixed and discharged. Id. The determining factor is the point at which the indemnitee suffers loss or damage through payment of a claim after judgment or settlement. Id. Thus the Medical Center would not suffer prejudice because the statute of limitations has not yet begun to run on any claim for indemnity against the physician involved.[14]
The third objection the Medical Center raises with respect to the proposed amendment is that it would be futile because it is barred by the statute of limitations. The claim relates to the Medical Center's conduct immediately after the child's birth. The child was born on January 23, 1987, and thus the amended complaint was asserted more than two years later. The plaintiffs offer two reasons for allowing this amendment. First, the plaintiffs allege that their claim for damages brought as administrators of their daughter's estate is not time-barred because it is subject to a six-year statute of limitations. The medical malpractice statute sets forth two exceptions to the general two-year statute of limitations. It states that a minor under six years can bring a medical malpractice action until two years from the date of injury or the child's sixth birthday, whichever is later. Del.Code Ann. tit. 18, § 6856(2) (Supp.1988). The statute applies to all injuries, including those that result in death. Id. at § 6856. The statute essentially tolls the limitations period during the first four years of a minor's life. This court finds that the statute of limitations for claims brought on behalf of Sima Azarbal was tolled during her life and began to run only on August 21, 1987, the date of her death.[15] Since the amended complaint was filed on April 10, 1989, those claims would not be time-barred.[16]
As to the claims brought by the plaintiffs as individuals, plaintiffs seek to have these relate back to the date of the original complaint. The inquiry again is whether the original complaint gave sufficient notice of the proposed amendment. *286 Hill v. Equitable Bank, 599 F.Supp. 1062, 1071 (D.Del.1984). Paragraph 11 of the original complaint, which sets forth the basis of plaintiffs' cause of action, states that "[d]efendants were negligent in the performance and administration of an amniocentesis procedure on August 12, 1986 and rendered professional care which fell below the acceptable standards of medical care in the State of Delaware as such standards are defined in 18 Del.C. § 6801." Plaintiffs allege that paragraph 11 states two claims  a specific claim of negligence regarding the amniocentesis and a general claim of negligence regarding the professional care given by the defendants. Plaintiffs thus contend that the amendment merely amplifies the general claim of negligence contained in paragraph 11. Such an interpretation of that paragraph is strained, at best. Any fair reading would conclude that the paragraph speaks only to the defendants' negligence with respect to the amniocentesis. In addition, the original complaint as a whole focuses solely on the amniocentesis, and never mentions post birth care. The court holds that the complaint did not give the Medical Center notice of this proposed amendment. The amendment therefore does not relate back and can not be amended on that basis.[17]

CONCLUSION
Based on the above discussion, this court grants plaintiffs' motion to amend the complaint with a claim against the hospital for negligent post-birth care, only insofar as that claim seeks damages on behalf of the infant. The court grants the remainder of plaintiffs' motion to amend in its entirety.
An Order will issue in accordance with this Opinion.
NOTES
[1] Dr. Palacio is named both individually and as a Delaware professional association.
[2] The complaint initially named an additional defendant, X-Ray Associates. Since that time, X-Ray Associates has been dismissed from the case.
[3] Ms. Azarbal had suggested and agreed to the sterilization about one month prior to the delivery. Appendix to Plaintiffs' Brief at Exhibit A (Deposition of Diana Azarbal). Dr. Palacio apparently wanted to perform the sterilization just after the caesarian so that Ms. Azarbal would not have to receive anesthesia a second time. Id.
[4] Plaintiffs apparently are not claiming that Dr. Palacio acted as the hospital's agent or employee. See Appendix to Medical Center's Brief at B-13 (Plaintiffs' Answers to Defendant Medical Center's First Interrogatories). Plaintiffs' allegation of negligence against the hospital regarding the amniocentesis seems to be that the hospital should have provided Dr. Palacio with a device used to show the position of the amniocentesis needle. Id. at B-33 (Deposition of Said Azarbal).
[5] Defendants have raised no objections to the other proposed amendments.
[6] Del.Code Ann. tit. 18, § 6801 (Supp.1988) states: `Informed consent' means the consent of a patient to the performance of health care services by a health care provider given after the health care provider has informed the patient ... of the nature of the proposed procedure or treatment and of the risks and alternatives to treatment or diagnosis which a reasonable patient would consider material to the decision whether or not to undergo the treatment or diagnosis.
[7] A federal court in a diversity action must apply the relation-back provision of Rule 15(c), rather than state rules. Scalise v. Beech Aircraft Corp., 47 F.R.D. 148, 151 (D.Del.1969).
[8] Dr. Palacio mistakenly relies on another Delaware Superior Court case to support his contention that informed consent must be given prior to the date of the procedure. It is true that the court in Rankin v. Olmedo stated that "the charge of lack of informed consent for the surgery had to have arisen before the surgery was performed." No. 77C-AU-10 at ¶ 5 (Del.Super. Aug. 21, 1979). However, the very next sentence in the opinion concludes that "[t]he date of the wrongful act or omission [for the lack of informed consent claim] would be the date of the surgery." Id. (emphasis added). It might well be better medical practice and even common medical practice to discuss the risks of a procedure prior to the date of the procedure so that the patient can have sufficient time to make up her mind. However, informed consent could certainly be effectively done on the date of a procedure, and the Superior Court has made clear that it is that date which should be looked to in determining whether an informed consent claim is time-barred.
[9] In addition, this court believes that the plaintiffs' answers to Dr. Palacio's interrogatories provided further notice of plaintiffs' claim of lack of informed consent to the sterilization. Plaintiffs' answers state that Dr. Palacio failed to inform the Azarbals of the injury inflicted on the fetus and advised Ms. Azarbal to undergo the sterilization without the knowledge of fetal injury. Appendix to Plaintiffs' Brief at Exhibit C (Plaintiffs' Answers to Palacio Defendants' Interrogatories at ¶ 1(f)). The answers to interrogatories were filed on November 9, 1988, within two years from the date of the sterilization. While this court sees no difficulty with looking outside the original complaint to find additional evidence of an opposing party's notice of a claim, disagreement exists as to this proposition. Compare 6 C. Wright & A. Miller, Federal Practice and Procedure § 1497, at 499 (1971) ("it is unwise to place undue emphasis on the particular way in which notice is received") with Holdridge v. Heyer-Schulte Corp., 440 F.Supp. 1088, 1094 (N.D.N.Y.1977) ("[T]he Court believes that, in applying the relation back doctrine, it must look to determine if adequate notice was supplied by the original complaint, rather than by papers which were subsequently filed in the action.").
[10] Dr. Palacio cites an analogous Eighth Circuit case which came to a different conclusion. In Fuller v. Marx, the original complaint alleged that the defendant doctor had negligently performed an autopsy. 724 F.2d 717, 719 (8th Cir.1984). The plaintiff sought to amend her complaint with a claim that the doctor had intentionally misstated the cause of death after the autopsy. Id. at 720. The Eighth Circuit held that the district court had not erred in denying the amendment. Id. at 721. However, the court noted that "[t]his is a very close question" and that the lack of notice to the doctor from any source and the significant degree of prejudice that would have resulted tipped the balance in the doctor's favor. Id. at 720. The facts in that case differ from those in the case at bar.
[11] Rule 12(b) also states that if, on a motion to dismiss for failure to state a claim, the parties present matters outside the complaint that are not excluded by the court, the motion shall be treated as one for summary judgment, and all parties shall be given reasonable opportunity to present all material pertinent to such a motion. However, the discovery material that has been presented to this court would also prevent granting summary judgment for Dr. Palacio on this issue. Ms. Azarbal indicated in her deposition that, after the amniocentesis, Dr. Palacio was very inquisitive as to whether the fetus was moving. Appendix to Defendant Palacio's Answering Brief at Exhibit C (Deposition of Diana Azarbal). Ms. Azarbal had gone to Dr. Palacio for her first child, and she noticed a marked difference in the number of questions Dr. Palacio asked during her pregnancy with Sima and in the way he asked her those questions. Id. In his deposition, Dr. Palacio denied that he had penetrated the fetus' skull with the needle, indicating that he had no knowledge of any problem. Id. at Exhibit D (Deposition of Dr. Palacio). The record currently demonstrates a genuine issue of material fact that would preclude granting summary judgment for Dr. Palacio. See Fed.R.Civ.P. 56(c).
[12] Dr. Azarbal practices obstetrics and gynecology. As a result, Dr. Palacio has placed great emphasis on Dr. Azarbal's suspicions after the amniocentesis that the procedure had not gone well. However, Dr. Azarbal's knowledge is not relevant to plaintiffs' prima facie case, and would be relevant only to any defenses asserted by Dr. Palacio.
[13] In Tamari, the plaintiffs sought leave to amend ten years after the complaint was filed. 838 F.2d at 909. In addition, the motion to amend in this case was filed by the amendment deadline agreed to by all of the parties.
[14] The Medical Center contends that the Delaware courts have strictly construed the statute of limitations for medical malpractice. The Medical Center thus implies that the legislature may have intended the medical malpractice limitations period, which starts to run at the date of injury, to apply to claims for indemnification as well. Such a conclusion makes no sense. In the context of a third-party claim for contribution where the underlying tort claim had a one-year limitations period, the Delaware Superior Court noted the absurd result that would occur if the statute of limitations began to run on the date of injury. Goldsberry v. Frank Clendaniel, Inc., 109 A.2d 405, 408 (Del. Super.1954). "In this jurisdiction, an injured plaintiff may, and frequently does, wait until the day before the year subsequent to the date of his injury has elapsed before filing suit. Before defendant has even been served, a year has elapsed and he would be barred from filing a third-party claim." Id.
[15] The disability of a minor terminates at her death, at which time the statute of limitations begins to run. 51 Am.Jur.2d Limitations of Actions § 185 (1970).
[16] The claims brought by the parents as individuals would not be subject to the six-year exception, however. Myer v. Dyer, 542 A.2d 802, 806 (Del.Super.1987).
[17] Plaintiffs also argue that the Medical Center's answer to the original complaint demonstrates that the Medical Center had notice of the claim regarding post-birth care. Plaintiffs' interpretation of the answer is farfetched. The complaint set forth a brief chronology, and included such facts as the child's birthdate and her brain-damaged condition at birth. In its answer, the hospital was merely admitting that those facts were true, adding only that the infant was taken to the neonatal intensive care unit the day after her birth. The answer did not admit any wrongdoing, nor did it indicate that the hospital believed the admitted facts were part of a claim for negligent post-birth care. Plaintiffs' contention to the contrary is patently unfounded.