Judith MOORE, Plaintiff–Appellant,

v.

Roy BAKER; Neurological Institute of Savannah, P.C. and Memorial Medical Center, Defendants–Appellees.

No. 91–8944.

United States Court of Appeals, Eleventh Circuit.

April 30, 1993.

---

Julian H. Toporek, Savannah, GA, for plaintiff-appellant.

William P. Franklin, Jr., Wendy Woods Williamson, Oliver, Maner & Gray, Savannah, GA, for defendants-appellees.

Before ANDERSON, Circuit Judge, MORGAN and JOHNSON, Senior Circuit Judges.

MORGAN, Senior Circuit Judge:

Appellant contends that her doctor violated Georgia's informed consent law by failing to advise her that ethylene diamine tetra acetic acide chelation (EDTA) therapy was available as an alternative to surgery. The district court granted summary judgment in favor of defendants/appellees on the ground that EDTA therapy is not a "generally recognized or accepted" alternative treatment for coronary surgery. We AFFIRM.

### FACTUAL AND PROCEDURAL BACKGROUND

Appellant, Judith Moore, was suffering from a partial blockage of her left common carotid artery, which impeded the flow of oxygen to her brain and caused her to feel dizzy and tired. In April of 1989, she consulted with appellee Dr. Roy Baker, an employee of the Neurological Institute of Savannah, P.C. (NIS), about her symptoms. Dr. Baker diagnosed a blockage of her left carotid artery due to artherosclerotic plaque and recommended that she undergo a neurosurgical procedure known as a carotid endarterectomy to correct her medical problem.

Dr. Baker discussed the proposed procedure with Moore and advised her of the risks of undergoing the surgery. He did not advise her, however, of an alternative treatment known as EDTA therapy. Moore signed a written consent allowing

Dr. Baker to perform the carotid endarterectomy on April 7, 1989. Following surgery, she appeared to recover well, but soon the hospital staff discovered that Moore was weak on one side. Dr. Baker reopened the operative wound and removed a blood clot that had formed in the artery. Although the clot was removed and the area repaired, Moore suffered permanent brain damage. As a result, Moore is permanently and severely disabled.

On April 8, 1991, the last day permitted by the statute of limitations, Moore filed a complaint alleging that Dr. Baker committed medical malpractice by failing to inform her of the availability of EDTA therapy as an alternative to surgery in violation of Georgia's informed consent law, O.C.G.A. § 31–9–6.1 (1991). According to Moore's complaint, EDTA therapy is as effective as carotid endarterectomy in treating coronary blockages, but it does not entail those risks that accompany invasive surgery.

On August 6, 1991 Dr. Baker filed a motion for summary judgment on the issue of informed consent. On August 26, 1991, Moore moved to amend her complaint to assert allegations of negligence by Dr. Baker in the performance of the surgery and in his post-operative care of Moore. Originally, on September 3, 1991, the district court granted Moore's motion to amend her complaint. Shortly thereafter, the district court granted Dr. Baker's motion for summary judgment on the informed consent issue, finding that EDTA therapy is not a "generally recognized or accepted" alternative treatment for coronary surgery. One month later, the district court vacated its September 3rd order and denied Moore's motion to amend her complaint, thus terminating all of Moore's outstanding claims. Moore now appeals the denial of her motion to amend her complaint as well as the grant of summary judgment in favor of Dr. Baker and NIS.

## I.

Moore claims that the district court abused its discretion by vacating it's earlier order and denying Moore's motion to amend her complaint. Leave to amend a complaint "shall be freely given when justice so requires." Fed.R.Civ.P. 15(a). While a decision whether to grant leave to amend is clearly within the discretion of the district court, a justifying reason must be apparent for denial of a motion to amend. *Nolin v. Douglas County*, 903 F.2d 1546, 1550 (11th Cir.1990). In the instant case, the lower court denied leave to amend on the ground that the newly-asserted claim was barred by the applicable statute of limitations and that allowing the amendment would, therefore, be futile. If correct, the district court's rationale would be sufficient to support a denial of leave to amend the complaint. *See Middle Atl. Util. Co. v. S.M.W. Dev. Corp.*, 392 F.2d 380, 385 (2d Cir.1968) ("It is normally proper for the trial judge to consider the statute of limitations on a motion to amend. To delay until there is a later motion to dismiss because the claim is time-barred would be a wasteful formality.")

Moore filed her original complaint on the last day permitted by Georgia's statute of limitations. *See* O.C.G.A. § 9–3–71 (Supp.1992). Accordingly, the statute of limitations bars the claim asserted in Moore's proposed amended complaint unless the amended complaint relates back to the date of the original complaint. An amendment relates back to the original filing "[w]henever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading." Fed.R.Civ.P. 15(c). The critical issue in Rule 15(c) determinations is whether the original complaint gave notice to the defendant of the claim now being asserted. *Woods Exploration & Producing Co., Inc. v. Aluminum Co. of America*, 438 F.2d 1286, 1299–1300 (5th Cir.1971), *cert. denied*, 404 U.S. 1047, 92 S.Ct. 701, 30 L.Ed.2d 736 (1972). "When new or distinct conduct, transactions, or occurrences are alleged as grounds for recovery, there is no relation back, and recovery under the amended complaint is barred by limitations if it was untimely filed." *Holmes v. Greyhound Lines, Inc.*, 757 F.2d 1563, 1566 (5th Cir.1985).

■ Moore relies heavily on *Azarbal v. Medical Center of Delaware, Inc.*, 724 F.Supp. 279 (D.Del.1989), which addressed the doctrine of relation back in the context of a medical malpractice case. In *Azarbal*, the original complaint alleged negligence in the performance of an amniocentesis on the plaintiff, resulting in injury to the fetus. After the statute of limitations had expired, the plaintiff sought to amend the complaint to add a claim that the doctor failed to obtain her informed consent prior to performing a sterilization procedure on her because the doctor did not tell her that the fetus had probably been injured by the amniocentesis. The district court found that "the original complaint provided adequate notice of any claims Ms. Azarbal would have arising from the amniocentesis, including a claim that Dr. Palacio should have revealed that the procedure had caused fetal injury." *Azarbal*, supra at 283.

The instant case is clearly distinguishable from *Azarbal*. Unlike the complaint in *Azarbal*, the allegations asserted in Moore's original complaint contain nothing to put Dr. Baker on notice that the new claims of negligence might be asserted. Even when given a liberal construction, there is nothing in Moore's original complaint which makes reference to any acts of alleged negligence by Dr. Baker either during or after surgery.[1] The original complaint focuses on Baker's actions before Moore decided to undergo surgery, but the amended complaint focuses on Baker's actions during and after the surgery. The alleged acts of negligence occurred at different times and involved separate and distinct conduct. In order to recover on the negligence claim contained in her amended complaint, Moore would have to prove completely different facts than would otherwise have been required to recover on the informed consent claim in the original complaint.

We must conclude that Moore's new claim does not arise out of the same conduct, transaction, or occurrence as the claims in the original complaint. Therefore, the amended complaint does not relate back to the original complaint, and the proposed new claims are barred by the applicable statute of limitations. Since the amended complaint could not withstand a motion to dismiss, we hold that the district court did not abuse its discretion in denying Moore's motion to amend her complaint.

## II.

■ Moore also challenges the district court's grant of summary judgment on the issue of informed consent. Summary judgment is appropriate where the nonmovant fails to make a showing sufficient to establish the existence of an element essential to that party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The nonmoving party must demonstrate more than a mere scintilla of evidence; if the nonmoving party's evidence is "merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–52, 106 S.Ct. 2505, 2510–12, 91 L.Ed.2d 202 (1986). Georgia's informed consent law requires physicians, before performing surgery, to inform their patients of the risks of surgery and of "the practical alternatives to such proposed surgical or diagnostic procedure which are generally recognized and accepted by reasonably prudent physicians." O.C.G.A. § 31–9–6.1(a)(5) (1991). It is undisputed that Dr. Baker failed to inform Moore of EDTA therapy as an alternative treatment. Dr. Baker con-

---

1. Moore's original complaint is very specific and focuses solely on Dr. Baker's failure to inform Moore of EDTA therapy as an alternative to surgery. Although the complaint recounts the details of the operation and subsequent recovery, it does not hint that Dr. Baker's actions were negligent. In fact, the only references in the original complaint relating to the surgery or post-operative care suggest that Dr. Baker acted with reasonable care. The com-

plaint states that "the nurses noticed a *sudden onset* of right sided weakness of which they *immediately informed Defendant Baker.*" (Complaint, ¶ 18). "Upon being informed of this [right sided weakness], Defendant *Baker immediately* caused Plaintiff to be returned to the operation suite.... Although the *clot was promptly removed* by Defendant Baker...." (Complaint, ¶ 19).

tends that he had no duty to inform Moore about EDTA therapy because it is not generally recognized and accepted among the medical community as an alternative treatment for Moore's condition.

The evidence overwhelmingly suggests that the mainstream medical community does not recognize or accept EDTA therapy as an alternative to a carotid endarterectomy in treating coronary blockages. In his supporting affidavit, Dr. Baker avers that during his medical education, he never received any instruction relating to EDTA therapy as an alternative to a carotid endarterectomy. A neurologist at the Medical College of Georgia confirmed that no one at the Medical College of Georgia teaches EDTA therapy or considers it a practical alternative to a carotid endarterectomy.' The record also reflects that a number of professional associations have voiced their opposition to EDTA therapy in this context.[2] Opposition to EDTA therapy is based not only upon the lack of objective evidence that the treatment is effective, but also upon evidence that the treatment may be dangerous.

Dr. Baker has produced ample evidence to negate an essential element of Moore's claim, thus shifting the burden to Moore to make a showing sufficient to create a genuine issue of fact. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 160, 90 S.Ct. 1598, 1609, 26 L.Ed.2d 142 (1970). In response to Baker's motion for summary judgment, Moore has produced the affidavits of two doctors: David A. Steenblock, an osteopathic physician, and Murray R. Susser, M.D. In essence, the testimony of Drs. Steenblock and Susser suggests that

they believe the medical profession *should* embrace EDTA therapy as a viable alternative to surgery. However, whether the medical profession should change its opposition to this treatment is not the issue before this court. Georgia's informed consent law does not require physicians to inform patients of all alternatives to surgery or even of all the alternatives that the medical profession should accept. The law requires disclosure only of those alternatives that are "generally recognized and accepted by reasonably prudent physicians". Dr. Steenblock's testimony seems to concede that Dr. Baker met this standard.[3] Dr. Susser, likewise, concedes that EDTA therapy is unpopular with surgeons and other members of the medical profession.[4]

Moore has produced evidence that suggests that some physicians approve of EDTA chelation therapy. Dr. Baker, on the other hand, has produced overwhelming evidence tending to show that EDTA therapy is not generally recognized and accepted by reasonably prudent physicians as an alternative to surgery. Moore's evidence is insufficient to create a genuine issue of material fact on the issue of whether EDTA chelation therapy is generally accepted. Therefore, we hold that the district court was correct in granting summary judgment in favor of Dr. Baker and NIS.

For all of the foregoing reasons, we AFFIRM the judgment of the district court.

2. The American Medical Association published a document in 1983 that concluded EDTA therapy was not established as an acceptable treatment for coronary or other arterial atherosclerosis. The American Heart Association does not recommend EDTA therapy for treatment of heart disease because the benefits have not been scientifically proven. The American Academy of Family Physicians agreed that EDTA therapy is not an established treatment for atherosclerosis vascular disease. Both the American College of Cardiology and the American College of Physicians, have opposed the therapy except on an experimental basis.

3. Q: Chelation therapy is not a conservative, standard or recognized treatment recognized by physicians who perform endarterectomies; is that a fair statement?
A: That's true.
Q: Would that be true as well with cardiologists, neurosurgeons and physicians who perform vascular surgery, and cardiologists?
A: As of this point in time, since the FDA hasn't approved its use for vascular disease, the *great majority of physicians*, including those you mentioned, *would not advocate the use of chelation therapy for treatment of vascular disease.* (Dr. Steenblock depo., pp. 120–21.)

4. Dr. Susser, Aff., p. 6.