Donald R. COLEMAN, Plaintiff,

v.

GEORGIA POWER COMPANY,
Defendant.

No. 21:98–CV–1529–ODE.

United States District Court,
N.D. Georgia,
Atlanta Division.

Feb. 9, 2000.

Matthew C. Billips, Zimring Smith & Billips, Atlanta, GA, for plaintiff.

Stephen William Riddell, Ashley Zeiler Hager, Troutman Sanders, Atlanta, GA, for defendant.

## ORDER

ORINDA D. EVANS, Chief Judge.

This civil action, in which Donald Coleman ("Plaintiff") alleges that he was terminated because of his disability, namely

obesity complicated by knee and back injuries, in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, is currently before the court on Defendant's motion for summary judgment, Plaintiff's motion to hold in abeyance Defendant's motion for summary judgment, and Defendant's motion for leave to file a supplemental reply brief in support of its motion. Plaintiff seeks reinstatement, full back-pay with prejudgment interest and employment benefits, compensatory damages for emotional distress, punitive damages, and attorney's fees and expenses.

In light of this court's July 13, 1999, order, in which the court denied Plaintiff's motion to compel further discovery, Plaintiff's motion to hold in abeyance Defendant's motion for summary judgment is hereby denied without discussion. Further, the court grants, without discussion, Defendant's motion for leave to supplement its reply brief in support of its motion for summary judgment to include Supreme Court case law promulgated after Defendant had filed its original reply brief.

The following facts are undisputed unless otherwise noted. Georgia Power Company ("GPC" or "Defendant") employed Plaintiff from March 23, 1973, through October 22, 1996, when Plaintiff was terminated for failing to meet GPC's weight guideline. His work performance was always satisfactory. Plaintiff was employed as a fleet mechanic—a position which sometimes required the use of aerial lift devices found on the back of GPC bucket trucks. Many of these aerial lift devices have 300–pound safety ratings. In June 1995, Defendant implemented a Region Operations and Power Delivery Weight Guideline ("Weight Guideline"), for the stated reason of ensuring the safety of its employees whose jobs require them to use these aerial devices.

The Weight Guideline mandates that every Region Operations or Power Delivery employee who may be required to use aerial devices is subject to a 300–pound safety rating weigh 280 pounds or less. If such an employee is over the 280 pound maximum, that employee will be given a one-time opportunity to participate in an individualized weight-loss program developed by a medical doctor at GPC's expense. If the employee is then able to lose sufficient weight to bring himself within the Weight Guideline in the proscribed period of time, he will be returned to his prior position. According to the 1995 Weight Guideline, if an employee remains outside of the weight limit after completing his weight loss program, he will be demoted to a position not requiring the use of aerial lift devices. Under the 1997 version of the Weight Guideline, an employee failing to meet the weight requirement might be demoted or terminated.

On July 24, 1995, Ronnie Ivey ("Ivey"), Plaintiff's supervisor, weighed Plaintiff on a GPC scale. According to that scale, he weighed 343 pounds. Ivey then took Plaintiff to a medical clinic where he was evaluated by Dr. Walter Dunbar. According to the clinic's scale, Plaintiff weighed 339 pounds. Dr. Dunbar's report states that Plaintiff's heart, peripheral vessels, abdomen, genitalia, prostate, thyroid, musculoskeletal and neurological systems were normal. However, Dr. Dunbar did find Plaintiff morbidly obese and determined that he had diabetes mellitus and hyperlipidemia (high cholesterol) and was at high risk for heart attack. The doctor also noted that Plaintiff was "capable of continuing work as a fleet mechanic." (Dunbar report at 4). Dr. Dunbar did not place any restrictions on Plaintiff due to his obesity.

Recommending that Plaintiff lose two pounds per week by means of diet and exercise, Dr. Dunbar sent Plaintiff to a nutritionist who would outline a diet and exercise program. Defendant then placed Plaintiff on this weight program, pursuant to the Weight Guideline and told him that he needed to reach the 280 pound target weight by May 20, 1996. Under this regime, Plaintiff was able to lose the neces-

sary weight. On May 20, 1996, he weighed in at 278 pounds and was thus permitted to continue working as a fleet mechanic. However, on October 21, 1996, Plaintiff was weighed again at GPC. Finding him over the weight limit, his new supervisor, James Faulkner, took Plaintiff back to the medical clinic. According to the clinic's scale, he weighed 296 pounds.

On October 22, 1996, Defendant informed Plaintiff he was being terminated for violation of the Weight Guideline. Plaintiff claims he is morbidly obese and suffers from limitations caused by knee and back injuries as well as diabetes. He asserts that Defendant's termination of him based on the Weight Guideline is pretextual. He claims that he has not been required to operate an aerial device from the bucket in the last five years, and in any case operating an aerial device constitutes less than one percent of the duties of a fleet mechanic. Moreover, the Weight Guideline in force at the time of his termination only provided for demotion, and not termination, for failure to comply with the Weight Guideline.

Plaintiff filed his discrimination claim with the Equal Employment Opportunity Commission ("EEOC") and received his right to sue letter on March 5, 1998. On May 27, 1998, he brought this suit. Defendant has moved for summary judgment on the ground that Plaintiff does not suffer from a disability as defined by the ADA and is therefore not entitled to its protection.

Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In ruling on Defendant's motion, the court must view the evidence in a light most favorable to Plain-

tiff. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). To prevail on its motion for summary judgment, Defendant must show that the evidence is insufficient to establish an essential element of Plaintiff's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). If Defendant makes a sufficient showing, then the Plaintiff "must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (quoting Fed.R.Civ.P. 56(3)). If the evidence supporting the Plaintiff's claims is insufficient for a jury to return a verdict for Plaintiff, or is "merely colorable" or "not significantly probative," then Defendant is entitled to summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). If, however, reasonable minds could differ as to the import of the evidence, and a reasonable interpretation of the evidence could lead to a verdict for the Plaintiff, then summary judgment is inappropriate. *Id.* at 251–52, 106 S.Ct. 2505.

■ To establish a prima facie case of unlawful discrimination under the ADA, a plaintiff must show that: (1) he is disabled; (2) he is qualified to perform the essential functions of the job, with or without reasonable accommodation; and (3) he suffered adverse employment action because of his disability. *Gordon v. E.L. Hamm & Assoc., Inc.*, 100 F.3d 907, 910 (11th Cir. 1996). Plaintiff bears the burden of proving his prima facie case by a preponderance of the evidence. *See Doe v. Dekalb County School Dist.*, 145 F.3d 1441 (11th Cir.1998).

The sole issue before the court is whether Plaintiff is disabled within the meaning of the ADA.[1] The ADA defines "disability" as a(1) physical or mental impairment that

---

1. Ultimately however, in order to prevail on his ADA claim, Plaintiff will also have to prove the other two elements of a prima facie case, namely, that he was a qualified individual and that he was discriminated against because of his disability.

substantially limits one or more of the major life activities of an individual; (2) a record of such impairment; or (3) being regarded as having such impairment. 42 U.S.C. § 12102(2). Accordingly, for an individual to be disabled within the meaning of the ADA he must satisfy at least one of these prongs. Plaintiff alleges that he meets the definition of disability under each of these prongs. Whether a person has a disability within the meaning of the ADA is an individualized inquiry. *See Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 119 S.Ct. 2139, 2147, 144 L.Ed.2d 450 (1999). Courts must examine "the effect of [the] impairment on the life of the individual." 29 C.F.R. § 1630.2(j).

Turning now to the question of whether Plaintiff meets the definition of disability under the first prong, Plaintiff must show that he has a mental or physical impairment and that such impairment substantially limits a major life activity. In the first instance, the parties dispute whether Plaintiff's morbid obesity constitutes an impairment as contemplated by the ADA.

The EEOC issued regulations implementing the ADA in which it defined a "physical impairment" as

> Any physiological disorder, or condition, cosmetic disfigurement, or anatomical loss affecting one or more of the following body systems: neurological, musculoskeletal, special sense organs, respiratory (including speech organs), cardiovascular, reproductive, digestive, genito-urinary, hemic and lyphatic, skin, and endocrine.

29 C.F.R. § 1630.2(h)(1). According to these EEOC guidelines the "definition of impairment does not include physical characteristics such as eye color, hair color, left-handedness, or height, weight or muscle tone that are within 'normal' range and are not the result of a physiological disorder." 29 C.F.R. pt 1630, App. § 1630.2(h). The guidelines also say that "except in rare circumstances, obesity is not considered a disabling impairment." 29 C.F.R. pt 1630, App. § 1630.2(j). Unfortunately,

the guidelines do not discuss what those rare circumstances may be. However, they do give examples, which the court finds instructive, of conditions that would and would not qualify as impairments under the definition given above. *See* 29 C.F.R. pt 1630, App. § 1630.2(h). For example, pregnancy, while likely affecting nearly all bodily systems, is not an impairment because it is not the result of a physiological disorder or condition. *Id.*

The Eleventh Circuit has never considered the issue of whether obesity is an impairment for purposes of establishing disability under the ADA. Although a number of courts have refused to find that obesity is a disabling impairment, many of those cases are distinguishable either factually or because the courts reached their decision, without discussing the question of whether obesity is an impairment, on the grounds that plaintiffs failed to show that they were substantially limited in a major life activity. Such cases provide little guidance at this point in the court's analysis. However, several cases have found, or implied, that in order for obesity to be an impairment it must not only affect a bodily system but must also result from a physiological condition. *See e.g. Andrews v. State of Ohio*, 104 F.3d 803, 808 (6th Cir. 1997) (finding "physical characteristics that are 'not the result of a physiological disorder' are not considered 'impairments' for the purposes of determining either actual or perceived disability"); *Francis v. Meriden*, 129 F.3d 281, 286 (2d Cir.1997) (finding "obesity, except in special cases where the obesity relates to a physiological disorder, is not a 'physical impairment' within the meaning of the [ADA]"); *See also Cook v. State of Rhode Island, Dep't of Mental Health, Retardation and Hospitals*, 10 F.3d 17, 23 (1st Cir.1993) (upholding jury verdict for a plaintiff who claimed she was discriminated against in violation of the Rehabilitation Act due to her morbid obesity because jury could plausibly have found that plaintiff's morbid obesity was a physical impairment as "she pre-

sented expert testimony that morbid obesity is a physiological disorder involving a dysfunction of both the metabolic system and the neurological appetite-suppressing signal system, capable of causing adverse effects within the musculoskeletal, respiratory and cardiovascular systems.")[2]

■ In light of the above, it appears to this court that while obesity generally is not considered an impairment it can be found to be an impairment in limited circumstances where it is shown both to affect one of the bodily systems outlined in the guideline definition for physical impairment and where such obesity is related to a physiological disorder. In his response to Defendant's motion for summary judgment, Plaintiff does not argue that his obesity is indeed the result or symptom of a physiological disorder, rather, he simply contends that it need not be. However, in his statement of facts, Plaintiff asserts that his "morbid obesity is a physiological condition that affects, among other things, [Plaintiff's] cardiac, endocrine, and circulatory systems" and causes him to suffer from diabetes mellitus. He cites to the deposition testimony of Dr. Dunbar for support.

Dr. Dunbar's deposition however is somewhat ambiguous. When asked whether he would "agree that morbid obesity would be a physiological disorder or condition affecting one or more of the following body systems including neurologi-

cal, musculoskeletal, special sense organs, respiratory, cardiovascular, reproductive, digestive genitourinary, hemic, and lymphatic, skin and endocrine systems," (Dunbar Dep. at 10), the doctor responded "In that general application, yes." (Id. at 11). However, Dr. Dunbar never agreed that such was so with respect to his application of the term morbid obesity to Plaintiff.[3] In his report, Dr. Dunbar found Plaintiff's heart, peripheral vessels, abdomen, genitalia, prostate, musculoskeletal and neurological systems normal and his chest clear to auscultation and percussion. However, at the deposition, Dr. Dunbar explained that morbid obesity can cause the onset of pathologic conditions such as diabetes mellitus, hypertension, stroke or heart attack, among others. (Id.) He indicated that Plaintiff had diabetes mellitus, affecting the endocrine system, and hyperlipidemia, an elevation of blood fats, the long-term effect of which may accelerate the rate of peripheral vascular disease and lead to a stroke, heart attack or kidney failure for example.

■ While it appears that Plaintiff's obesity may have affected his bodily systems, it is less clear whether his obesity was a "physiological disorder." Despite Dr. Dunbar's answer above, when asked whether Mr. Coleman had any kind of medical condition which caused him to weigh 339 pounds, the doctor answered "no."[4] (Id. at 27). Additionally, Plaintiff

2. As a general matter, "[b]ecause the ADA and the RHA [Rehabilitation Act] are very similar, we look to caselaw interpreting one statute to assist us in interpreting the other." Francis v. Meriden, 129 F.3d 281, 284 n. 4 (2d Cir.1997); see also Pritchard v. Southern Co. Services, 92 F.3d 1130, 1132 n. 2 (11th Cir. 1996) ("Congress intended for courts to rely on Rehabilitation Act cases when interpreting similar language in the ADA.").

3. The definition which Dr. Dunbar agreed was consistent with his use of morbid obesity in his report on Plaintiff defined morbid obesity as "obesity sufficient to prevent normal activity or physiologic function or to cause the onset of a pathologic condition," where "obesity" had been defined as "an abnormal in-

crease of fat in the subcutaneous connective tissues." (Dunbar Dep. at 9). This definition, which Dr. Dunbar stated was taken from the third edition of Stedman's Concise Medical Dictionary for the Health Professions at page 615 (see Dunbar Dep. at 8), does not suggest that morbid obesity is a physiological disorder. Further, Dr. Dunbar clarified that by that definition, a pathologic condition need not presently exist, rather it may develop in the future. (Id. at 11).

4. Dr. Dunbar acknowledged that obesity could be caused by genetic factors but stated that the only genetic factor that he could identify was a reported family history of some obesity in other family members. (Id.) He did not perform any genetic testing to determine

does not recall any of his doctors ever giving him any medical reason to explain why he was overweight.[5] (Pl.Dep. at 148). Although this court will not say that morbid obesity cannot be shown to be a physical impairment in some cases, having applied the above standard to the facts of this case, the court finds that Plaintiff has not met his burden of showing that his morbid obesity is a physical impairment as he has not shown that it is a "physiological disorder."

This conclusion is necessary in order to avoid a dilution of the ADA. *See e.g., Forrisi v. Bowen,* 794 F.2d 931, 934 (4th Cir. 1986) (in context of Rehabilitation Act). The ADA was meant to protect people who are truly disabled. "It is incumbent on the courts to faithfully adhere to the intended scope of the statute so that it does not become 'a catch-all cause of action for discrimination based on appearance, size, and any number of other things far removed from the reasons the statutes were passed.'" *Fredregill v. Nationwide Agribusiness Insurance Co.,* 992 F.Supp. 1082, 1091 (S.D.Iowa 1997) (quoting *Francis,* 129

F.3d at 285–86); *see also Andrews,* 104 F.3d at 810. Therefore, as Plaintiff has failed to show his impairment meets the definition of disability under the first prong of the definition, he cannot survive summary judgment on this prong.

■ The court now turns to the second and third prongs of the definition, namely, whether Plaintiff had a record of an impairment which substantially limited a major life activity or was regarded as having such impairment. Plaintiff only argues that he has a record of disability because he has been morbidly obese since 1980 and that he was perceived as disabled because Defendant was aware of his obesity.[6] This is not enough.[7] While Plaintiff may well be able to show a record of obesity and/or that GPC regarded him as obese, under these prongs, Plaintiff must demonstrate, respectively, a record of being substantially limited in a major life activity and that GPC regarded him as substantially limited in a major life activity. Plaintiff has not made either showing.

First, to make out an ADA claim based on having a record of impairment, Plaintiff

---

whether Plaintiff had a genetic condition causing him to be overweight. (*Id.* 27, 43).

5. However, he does mention that the nutritionist he met with at the advice of Dr. Dunbar may have suggested he might have a problem with his metabolism. (Pl.Dep. at 65).

6. Plaintiff also argues that GPC was aware of his diabetes and thus was aware of his disability. However, Plaintiff is not claiming that his diabetes is the disability that resulted in the discrimination; therefore, the court does not find Plaintiff's argument relevant. Further, the court rejects Plaintiff's suggestion that he is substantially limited in all major life activities because his obesity has caused him to suffer from insulin dependent diabetes mellitus which, if he were to stop taking corrective medication, would cause him to lapse into a coma and die. The Supreme Court has recently held that in considering whether an individual is disabled the court must consider that individual's condition under corrective measures. *See Sutton,* 119 S.Ct. at 2146 ("if a person is taking measures to correct for, or mitigate, a physical or mental impairment,

the effects of those measures … must be taken into account when judging whether that person is 'substantially limited' in a major life activity and thus 'disabled' under the Act."). Plaintiff does not assert that his diabetes cannot be controlled either by diet or medication; indeed it appears that his diabetes is currently so controlled. Plaintiff also has not claimed that he cannot perform any major life activity due to his diabetes when his diabetes is controlled. Finally, Plaintiff has not shown that GPC regarded him as substantially limited in any major life activity because of his diabetes. Therefore, Plaintiff's argument that GPC knew of his diabetes and hence "regarded him" as disabled must fail.

7. A physical impairment standing alone is not necessarily a disability as contemplated by the ADA. *See Pritchard v. Southern Company Services,* 92 F.3d 1130, 1132 (11th Cir.1996). The ADA requires that the impairment "substantially limit" one or more of the individual's "major life activities." *Id.* Major life activities include activities such as "caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." 29 C.F.R. § 1630.2(i).

must demonstrate that at some time in the past he was classified as having an impairment that substantially limited a major life activity. *See* 29 C.F.R. § 1630.2(k); *Hilburn v. Murata Electronics North America, Inc.*, 181 F.3d 1220, 1228 (11th Cir. 1999). "The intent of this provision, in part, is to ensure that people are not discriminated against because of a history of disability.... This part of the definition is satisfied if a record relied on by an employer indicates that the individual has or has had a substantially limiting impairment.... There are many types of records that could potentially contain this information, including but not limited to, education, medical, or employment records." 29 C.F.R. pt 1630, App. § 1630.2(k). While Plaintiff has proffered medical records which show that he had been classified as obese (see Dunbar report), these records do not reflect any substantial limitation in any major life activity due to Plaintiff's obesity. Dr. Dunbar's report does not list any limitations for Plaintiff and finds him fit to return to work.

Next, with respect to the "regarded as" prong of the disability definition, Plaintiff has to show that GPC perceived him to either have a substantially limiting impairment that he did not have, or that GPC thought he had a substantially limiting impairment, when, in fact, the impairment was not so limiting. *See Sutton,* 119 S.Ct. at 2150. Plaintiff cannot succeed under

either test as he has failed to show that GPC perceived Plaintiff to be substantially limited with respect to any major life activity.[8] *See e.g., Standard v. A.B.E.L. Servs., Inc.*, 161 F.3d 1318, 1327 n. 2 (11th Cir. 1998) (citing § 29 C.F.R. 1630.2(*l*)) (stating that as with actual disabilities, a perceived impairment must be believed to substantially limit a major life activity of the individual). Nothing in the record indicates that GPC was aware that Plaintiff had a history of being substantially limited in any major life activity nor does anything in the record indicate that GPC regarded Plaintiff as being so limited. Therefore, the court finds that Plaintiff has failed to discharge his burden of establishing that he is disabled within the meaning of the ADA.

Accordingly, Plaintiff's motion to hold in abeyance Defendant's motion for summary judgment [# 29] is DENIED. Defendant's motion for leave to file a supplemental reply brief [# 34] is GRANTED. Defendant's motion for summary judgment [# 24] is hereby GRANTED.

8. At most, Plaintiff could argue that GPC regarded him as limited in his ability to perform mechanics jobs which require him to use aerial lift devices. However, in order to show that Defendant regarded him as substantially limited in the major life activity of working Plaintiff would have to demonstrate that GPC perceived him as unable to work in a broad range of jobs. The Supreme Court has confirmed that

> When the major life activity under consideration is that of working, the statutory phrase "substantially limits" requires, at a minimum, that plaintiffs allege they are unable to work in a broad class of jobs. Reflecting this requirement, the EEOC uses a specialized definition of the term "substantially limits" when referring to the major life activity of working: "significantly re-

stricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities. The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working." § 1630.2(j)(3)(i).

*Sutton,* 119 S.Ct. at 2151. Plaintiff has made no showing that GPC regarded him as unable to perform a broad class of jobs. The *Sutton* court also noted that the mere fact that the employer in that case had established a vision requirement did not establish that the employer regarded anyone who could not meet that requirement as substantially limited in the major life activity of working. The same would be true in this case with respect to the GPC and the weight guidelines.