**Manuel MERKER, as Personal Representative of the Estate of Muriel Merker, deceased, on behalf of the Estate and on behalf of Decedent's lawful survivor, to wit; Manuel Merker, surviving husband, Plaintiffs,**

v.

**MIAMI–DADE COUNTY FLORIDA, a Political subdivision of the State of Florida, Defendant.**

No. 06–21652CIV.

United States District Court, S.D. Florida.

April 27, 2007.

Erica S. Zaron, Craig E. Leen, and Eric K. Gressman, of record for Miami–Dade County.

### ORDER GRANTING IN PART DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS AND/OR SUMMARY JUDGMENT AS TO PLAINTIFF'S ADA CLAIM AND REMANDING STATE WRONGFUL DEATH CLAIM TO STATE COURT

SEITZ, District Judge.

THIS MATTER is before the Court upon Defendant's Motion for Judgment on the Pleadings, or, Alternatively, Motion for Summary Judgment [DE–24] and Plaintiff's Motion for Partial Summary Judgment [DE–22]. Plaintiff Manuel Merker ("Plaintiff") initially filed this case in the state circuit court against Defendant Miami–Dade County ("Defendant" or "County") after his wife was thrown from her wheelchair while riding aboard a County bus. She subsequently died. The case originated as a one-count wrongful death action. Plaintiff's wife was not wearing a lap belt or shoulder harness to keep her in the wheelchair and Plaintiff alleged that the County was negligent in not equipping the bus with proper restraints. The case was tried to a jury verdict in Plaintiff's favor in state court. On remand after the appellate court affirmed the trial court's post-trial rulings granting a new trial on certain damages, Plaintiff amended his complaint to add a claim for compensatory damages and attorneys fee under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131 et seq. Defendant thereafter removed the case to this Court based on federal question jurisdiction.

Defendant now moves for judgment in its favor on Plaintiff's ADA claim on three distinct grounds. *First*, Defendant argues that Plaintiff's wife is not a qualified individual with a disability under the ADA because the specific allegation of discrimination—the failure to provide a proper seat belt or shoulder harness—arises from her obesity, not the fact that she was confined to a wheelchair. Any discrimination for failing to provide proper restraints in this case does not arise from a qualified disability because the courts have uniformly held that obesity, absent some physiological cause, does not qualify as a disability under the ADA. *Second*, Defendant claims that Plaintiff's ADA cause of action is barred by the applicable statute of limitations. *Third*, Defendant contends that Plaintiff has no evidence that any discrimination on the County's part was intentional, as required to recover compensatory damages under the ADA. Based upon the Court's review of the record and the pertinent legal authorities, there are no material factual disputes with respect to the first two grounds raised by Defendants and the undisputed record shows that Defendant is entitled to judgment as a matter of law on these grounds. Accordingly, judgment in Defendant's favor on Plaintiff's ADA claim will be entered.

Having dismissed the ADA claim—which is the only federal claim at issue in the case and the sole basis for the Court's jurisdiction—and given the unique issues of state law involved in the wrongful death claim and related defenses, as well as the fact that the case was already tried once in state court, the Court declines to exercise any supplemental jurisdiction over the state cause of action and therefore remands it to the state circuit court for further proceedings.[1]

---

1. Plaintiff's Motion for Summary Judgment challenges a number of Defendant's affirmative defenses. Several of the arguments in Plaintiff's motion intersect with the Defendant's arguments and will be discussed herein. Otherwise, given the disposition of Defendant's motion, Plaintiff's arguments are moot.

## I.  Factual Background

In the words of the Florida Third District Court of Appeal:

The instant case arose from an accident involving a County transit bus upon which Ms. Merker was riding. Ms. Merker was wheelchair bound and rode the County transit bus to get to and from her job. The evidence reflects that on the day in question Ms. Merker's wheelchair was latched to the bus but that she was not wearing a bus lap belt. Instead, Ms. Merker was secured only by her wheelchair belt strap. The trial testimony reflects that a vehicle cut the transit bus off, forcing the bus driver to utilize the emergency brake. As a result of the sudden stop, Ms. Merker was thrown from her wheelchair, and sustained multiple fractures to her lower extremities. Ms. Merker was immediately taken to the hospital, and remained there for several months with additional medical conditions. Ultimately, Ms. Merker expired.

Mr. Merker brought a Wrongful Death action against the County, claiming that the County's negligence, in failing to assure that Ms. Merker was strapped by the bus lap belt, was the legal cause of Ms. Merker's death. At trial, evidence was presented that the bus was cut-off by another, unknown driver, forcing the bus to make the sudden stop which caused Ms. Merker to be ejected from her seat. Additionally, conflicting evidence was presented on the issue relating to the lap belt, i.e., whether Ms. Merker declined to wear the County bus lap belt or whether the County bus lap belt did not fit and the County was aware that the bus driver previously requested a lap belt extension. The jury heard conflicting testimony from several experts regarding the cause of Ms. Merker's death. Most

agreed, however, that the major contributing factor to Ms. Merker's cause of death was respiratory failure. The jury returned a verdict against the County, finding the County 100 percent negligent and specifically finding that neither Ms. Merker nor the second driver contributed to the negligence.

*Miami–Dade County v. Merker,* 907 So.2d 1213, 1214 (Fla. 5th DCA 2005).[2]

## II.  Legal Standards

█ Judgment on the pleadings under Fed.R.Civ.P. 12(c) is appropriate where there are no material facts in dispute and the moving party is entitled to judgment as a matter of law. *Scott v. Taylor,* 405 F.3d 1251, 1253 (11th Cir. 2005). In ruling on such a motion, the Court must accept the facts alleged in the Second Amended Complaint as true and view them in the light most favorable to the nonmoving party. *Id.* As such, a motion for judgment on the pleadings operates much like a motion to dismiss under Fed.R.Civ.P. 12(b)(6). *See Karedes v. Ackerley Group, Inc.,* 423 F.3d 107, 113 (2d Cir.2005) ("The test for evaluating a [motion for judgment on the pleadings] is the same as that applicable to a motion to dismiss under Fed.R.Civ.P. 12(b)(6).") (citation and quotation omitted); *see also* 5C Wright & Miler, Fed. Prac. & Proc. Civ.3d § 1368 (2007).

█ Summary judgment under Fed. R.Civ.P. 56(c) is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The moving party bears the initial respon-

2.  Both parties cite to this statement as an accurate summary of the facts of the case.

sibility of showing the Court, by reference to the record, that there are no genuine issues of material fact to be decided at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the initial burden is met, the non-moving party must go beyond the pleadings and "come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (quoting Fed.R.Civ.P. 56(e)); *see also Celotex,* 477 U.S. at 324, 106 S.Ct. 2548. To survive summary judgment, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* at 586, 106 S.Ct. 1348. Indeed, a mere "scintilla" of evidence supporting the opposing party's position will not suffice; instead, there must be a sufficient showing that the jury could reasonably find for that party. *Anderson,* 477 U.S. at 252, 106 S.Ct. 2505; *see also Walker v. Darby,* 911 F.2d 1573, 1577 (11th Cir.1990).

In assessing whether the parties have met their respective burdens, the Court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences from the facts in the non-movant's favor. *Denney v. City of Albany,* 247 F.3d 1172, 1181 (11th Cir.2001). However, "[i]f the non-moving party fails to 'make a sufficient showing on an essential element of [his] case with respect to which [he] bears the burden of proof,' then the court must enter summary judgment for the moving party." *Id.* at 1181 (quoting *Celotex,* 477 U.S. at 323, 106 S.Ct. 2548).

### III. Discussion

#### A. Disability

■ As part of her *prima facie* case under Title II of the ADA, Plaintiff bears the burden of establishing that his wife was a qualified individual with a disability and that she was discriminated against in the receipt of public services on the basis of that disability. *Shotz v. Cates,* 256 F.3d 1077, 1079 (11th Cir.2001). Defendant argues that judgment in its favor is warranted because Plaintiff's discrimination claim is founded on his wife's obesity, which is not a qualifying disability. Because obesity is generally not a qualifying disability, except in the rare case where such condition is shown to be the result of a physiological disorder (and there is no evidence in the record to bring her claim within the exception), any discrimination against Plaintiff's wife due to the lack of a large enough safety belt cannot form the basis of an actionable ADA claim.

"Disability" is defined under the ADA as a "physiological or mental impairment that substantially limits one or more of the major life activities of such individual." 42 U.S.C. § 12102(2)(a). Courts have uniformly held that obesity is not a qualifying impairment, or disability, unless it is shown to be the result of a physiological disorder. *See EEOC v. Watkins Motor Lines, Inc.,* 463 F.3d 436, 440–443 (6th Cir.2007) ("we hold that to constitute an ADA impairment, a person's obesity, even morbid obesity, must be the result of a physiological condition."); *Francis v. City of Meriden,* 129 F.3d 281, 286 (2d Cir.1997) ("obesity, except in special cases where the obesity relates to a physiological disorder, is not 'physical impairment' within the meaning of the [ADA] statutes."); *Coleman v. Georgia Power Co.,* 81 F.Supp.2d 1365, 1369 (N.D.Ga.2000) (same); *Fredregill v. Nationwide Agribusiness Ins. Co.,* 992 F.Supp. 1082, 1088–89 (S.D.Iowa 1997) (collecting cases).

■ Defendant concedes that because Plaintiff's wife was confined to a wheelchair she is likely qualified as disabled for that reason. Nevertheless, her claim for compensatory damages against the County

in this case stems not from being wheelchair bound, but from not having a restraining device large enough to accommodate her size. Plaintiff's Second Amended Complaint ("SAC") states, in pertinent part, that Defendant had a duty "to comply with the requirements of the Americans with Disabilities Act ... in providing transportation services to *obese* wheelchair bound individuals." SAC ¶ 12 (emphasis added). According to Plaintiff, prior to the accident Defendant was aware that "the seat belt and shoulder restraints located upon its buses were inadequate because they did not fit *obese* wheelchair bound passengers such as plaintiff Decedent." SAC ¶ 13 (emphasis added). Therefore, Plaintiff declares that "the plaintiff Decedent was discriminated against and denied access to similar services provided to *non-obese* wheelchair bound persons ...." SAC ¶ 15 (emphasis added). As a result of this alleged discrimination, Plaintiff alleges that his wife was thrown from her wheelchair and suffered bodily injuries. SAC ¶¶ 15–16. The foregoing plainly establishes that the alleged discrimination derives from the failure to provide services for *obese* wheelchair-bound individuals, not wheelchair bound individuals *per se.* Simply put, Plaintiff alleges that his wife was treated differently than *"non-obese* wheelchair bound persons."* SAC ¶ 15 However, except in special circumstances not alleged here,[3] there can be no ADA liability for discrimination based on obesity. It is simply not enough that Plaintiff's wife was disabled by virtue of her confinement to a wheel chair, when the discriminatory conduct alleged relates to her obesity, not her confinement to the wheelchair. Accordingly judgment must be granted in favor of Defendant on Plaintiff's ADA claim. *See Watkins Motor Lines, supra* (affirming district court's granting of summary judgment for defendants where alleged discrimination was based on plaintiff's weight); *Coleman, supra* (granting summary judgment where plaintiff's expert could not connect plaintiff's obesity with a physiological cause).

## B. Statute of Limitations

■ Defendant argues that Plaintiff's ADA claim is barred by the statute of limitations. The statute of limitations on a federal ADA claim arising in Florida is four years. *Everett v. Cobb County Sch. Dist.,* 138 F.3d 1407, 1409 (11th Cir.1998); *Ross v. Jim Adams Ford, Inc.,* 871 So.2d 312, 314 (Fla. 2d DCA 2004). Plaintiff's decedent was injured in the bus accident on July 19, 1999, and presumably discriminated against at the latest on that date. Plaintiff filed her Second Amended Complaint adding her ADA claim on June 1, 2006, almost three full years after the four year limitations period expired. Therefore, Defendant has met its *prima facie* case for a limitations defense, thus shifting the burden to "[P]laintiff to demonstrate that an exception or tolling provision applies." *Blue Cross & Blue Shield of Ala. v. Weitz,* 913 F.2d 1544, 1552 n. 13 (11th Cir.1990).

■ In his opposition, Plaintiff contends that his addition of the ADA claim "relates back" to the filing of his initial Complaint under Rule 15.[4] Federal Rule of Civil Procedure 15(c)(2) provides:

---

3. Plaintiff does not allege, and offers no evidence or argument to prove, that his wife falls within the exception to the rule that "obesity generally is not considered an impairment ... [unless] it is shown both to affect one of the bodily systems outlined in the guideline definition for physical impairment and where

such obesity is related to a physiological disorder." *Coleman,* 81 F.Supp.2d at 1369.

4. Although the parties do not clearly indicate the date on which the Plaintiff filed his initial Complaint in state court, they seem to agree that it was filed within the limitations period.

An amendment of a pleading relates back to the date of the original pleading when ... (2) the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading.

Fed.R.Civ.P. 15(c)(2). In the Eleventh Circuit, "[t]he critical issue in Rule 15(c) determinations is whether the original complaint gave notice to the defendant of the claim now being asserted." *Moore v. Baker,* 989 F.2d 1129, 1132 (11th Cir.1993) (citing *Woods Exploration & Producing Co., Inc. v. Aluminum Co. of America,* 438 F.2d 1286, 1299–1300 (5th Cir.1971)).

In *Moore,* for example, the court affirmed the denial of a motion to amend plaintiff's complaint to add a claim for negligent performance of a surgery, over plaintiff's argument that the new claim arose from the same facts and circumstances as the original claim, which was for negligent failure to inform plaintiff of the availability of an alternative to surgery. 989 F.2d at 1131. The court found that the new claim did not arise from the same conduct, transaction or occurrence under Rule 15(c) by comparing the original and amended complaints. While both complaints included claims related to the plaintiff's surgery and subsequent injury, the court found no allegations in the original complaint that would put the defendant on notice that he was being sued for his conduct during and after the surgery. Specifically, the court noted that in order to succeed on the claim in the amended complaint, plaintiff "would have to prove completely different facts than would otherwise have been required to recover on the [ ] claim in the original complaint." *Id.* at 1132.

Like the plaintiff's new claim in *Moore,* proof of Plaintiff's ADA claim requires unique facts from those required to prove his initial claim for wrongful death. Plaintiff will need to prove that the County *discriminated* against his wife, which is distinct from proving that the County was *negligent* towards her. To be sure, the background facts overlap somewhat, but Plaintiff will need to prove that the County knew about his wife's need for special accommodation and intentionally refused to provide it to her. This is not the same as the duty of care owed to her as a rider on the County bus. *See White v. NCL America, Inc.,* No. 05–22030–Civ, 2006 WL 1042548, *5 (S.D.Fla., March 8, 2006); *see also Dunfee v. Oberlin City School Dist.,* No. 05–CV–2648, 2007 WL 978102, *3 (N.D. Ohio Mar 29, 2007). Similarly, Plaintiff will need to prove that his wife is disabled within the meaning of the ADA and that the County treated her differently on the basis of this disability. As such, proving the wrongful death claim requires different facts than proving the ADA claim. Moreover, there is no reason why allegations in a complaint for wrongful death should have put the County on notice of an ADA claim for discrimination.

Plaintiff's response to Defendant's argument is inadequate. Plaintiff merely states in conclusory fashion that "[t]he factual predicate for the ADA claim is the conduct set forth in the original pleading." But Plaintiff never directs the Court to which factual allegations overlap, if any. Indeed, Plaintiff fails to provide a copy of the original Complaint so that the Court can compare the allegations made when the initial Complaint was filed to those in the operative Second Amended Complaint. Accordingly, the Court finds that the "relation back" doctrine of Rule 15(c)(2) is unavailing and summary judgement for Defendant on Plaintiff's ADA claim is required because the ADA claim is time-barred.[5]

---

5. Defendant asserts that laches is an alternative basis for judgment in its favor. But Defendant never clearly articulates the standard

## C. Intentional Discrimination

██ As an additional basis for judgment on the ADA claim, Defendant argues that there is insufficient evidence that it intentionally discriminated against Plaintiff's wife to send the case to a jury. Although it is unnecessary to address this argument given the resolution of first two grounds for judgment in Defendant's favor, the Court offers the following observations which may clarify the issues raised. Claims for compensatory damages under Title II of the ADA, like Plaintiff's claims here, require a showing that the defendant intentionally discriminated or acted with bad faith. *See Wood v. President & Trustees of Spring Hill College,* 978 F.2d 1214, 1219 (11th Cir.1992); *accord Ferguson v. City of Phoenix,* 157 F.3d 668, 674 (9th Cir.1998). Thus, "[a]s a general matter, good faith attempts to pursue legitimate ends are not sufficient to support an award of compensatory damages" under the Rehabilitation Act or the ADA. *Wood,* 978 F.2d at 1219.[6]

Defendant contends that Plaintiff's wife herself never made a decision-maker at the County aware of her needs, and without such notice any failure on the County's part to make the accommodations cannot be construed as intentional discrimination. Plaintiff responds that the County knew of Plaintiff's need for a proper restraining device, citing the testimony of Ms. Passion Roosevelt, the driver of the bus on the day of the accident. *See* DE–22, Ex. F, pp. 22–24. Ms. Roosevelt testified that she had spoken with a supervisor about the difficulty of fitting obese bus riders with the conventional safety belts. *Id.* Further-

more, Transit Director Cathy Lewis testified that concerns such as Ms. Roosevelt's should have risen to her office for review. *See* DE–35, Ex. A, p. 16. This evidence is sufficient to raise a reasonable inference, especially at the summary judgment stage, that an appropriate decision-maker had notice of the needed accommodation. It is unreasonable to suggest, as the County does, that only Plaintiff's decedent can be responsible for requesting a needed accommodation to County officials with decision-making authority, rather than simply passing the request on through employees and supervisors, as appears to have happened. None of the cases cited by Defendant stands for that proposition.

Even though the evidence presents a triable issue about whether Defendant had notice, it would be extremely difficult to characterize Defendant's failure to act on that notice as intentional discrimination, or even deliberate indifference, given that there can be no ADA discrimination based on obesity on the facts of this case. If the ADA imposes no duty to accommodate needs based on obesity, then failure to accommodate such needs is not, *a fortiori,* discriminatory conduct pursuant to the ADA under any measure of scienter. Moreover, even if the Court is mistaken and there were some ADA-imposed duty to accommodate Plaintiff's wife's obesity, that duty would not be so obvious as to rise to the level of intentional discrimination, especially given the County's other general efforts to comply with the ADA's requirements regarding safety restraints.

---

for proving laches, let alone meaningfully applies that standard to the facts of this case. Therefore, the Court will not address the laches defense.

**6.** Claims under the Rehabilitation Act and the ADA are analyzed in the same way. *See Cash v. Smith,* 231 F.3d 1301, 1305 n. 2 (11th

Cir.2000) ("Cases decided under the Rehabilitation Act are precedent for cases under the ADA, and vice-versa."); *Sutton v. Lader,* 185 F.3d 1203, 1207 n. 5 (11th Cir.1999) ("The standard for determining liability under the Rehabilitation Act is the same as that under the ADA.").

## IV. Supplemental Jurisdiction

Because there is no cognizable federal claim remaining in this case, now that the ADA claim is dismissed, and no other basis upon which to find subject matter jurisdiction, the Court will remand the remaining state law wrongful death claim to state court for further disposition. *See, e.g., Mergens v. Dreyfoos,* 166 F.3d 1114, 1119 (11th Cir.1999) (citing *United Mine Workers v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966)). Given that the case was previously tried in the state circuit court, and also because it raises state law issues of sovereign immunity, remand is appropriate. Therefore, upon due consideration of the Defendant's motion, it is hereby

ORDERED that

(1) Defendant's Motion for Judgment on the Pleadings, or, Alternatively, Motion for Summary Judgment [DE–24] is GRANTED and Plaintiff's Count I is Dismissed With Prejudice;

(2) The Court Declines to accept supplemental jurisdiction over Plaintiff's Count II which is therefore REMANDED to the Circuit Court of the Eleventh Judicial Circuit in and for Miami–Dade County for final disposition; and

(3) Any motions not otherwise ruled upon are DENIED AS MOOT and this case is CLOSED.