Sharon SIMMONS, Administrator of the Estate of Trina ELLIOTT, Deceased Plaintiff,

v.

UNITED STATES of America, Haiba Sonyika, M.D., Myrtle Kai, R.N., C.F.N.P., and Southside Healthcare, Inc., Defendants.

No. CIV.A.1:02–CV–1535–J.

United States District Court, N.D. Georgia, Atlanta Division.

March 31, 2004.

Jason Phillip Wright, Holland & Knight, Atlanta, GA, Steven Richard Ashby, Office of Steven R. Ashby, Stone Mountain, GA, Deborah Arlene Alroth, Thomas R. Cirignani & Associates, Chicago, IL, for Plaintiff.

Lisa D. Cooper, Office of United States Attorney, James Mackiell Hunter, Jason Phillip Wright, Cheryl A. Barnes, Holland & Knight, Atlanta, GA, for Defendants.

### ORDER

CARNES, District Judge.

This case is presently before the Court on defendants Sonyika, Kai, and Southside Healthcare, Inc.'s Motion to Dismiss [20] AND Plaintiff's Motion for Oral Argument on Defendants' Motion to Dismiss [25]. The Court has reviewed the record and the arguments of the parties and, for the reasons set out below, concludes that the defendants Sonyika, Kai, and Southside Healthcare, Inc.'s Motion to Dismiss [20] should be **GRANTED** AND Plaintiff's Motion for Oral Argument on Defendants' Motion to Dismiss [25] should be **DENIED**.

### BACKGROUND

### I. FACTUAL BACKGROUND

This case arises out of defendants' alleged medical malpractice in the treatment of Trina Elliott, deceased. Plaintiff alleges that defendants' negligence from June 5, 1997 until April, 1999 caused Trina Elliott's death. For the purposes of the pending motions, the only relevant alleged negligence is that which occurred before November 3, 1997. After that date, Southside Healthcare, Inc. (hereinafter, "Southside") became a federally supported health facility, thereby rendering the United States of America (hereinafter, the "Government") the only party liable for negligence under the Federal Tort Claims Act, 28 U.S.C. §§ 2671–2680 (2003) from that date forward.

### A. Alleged Pre–November 3, 1997 Act of Negligence at Issue

Elliott came under the care and treatment of defendants Sonyika and Kai at defendant Southside prior to 1997. (Pl.'s First Amended Compl. for Medical Malpractice [19] at ¶ 58.) On June 5, 1997, Elliott came to Southside for a routine pap test, which was administered by defendant Sonyika. (*Id.* at ¶ 59.) On June 11, 1997, the pap test came back indicating an abnormal result, and the chart was marked with the notation "letter," but Elliott allegedly was not notified of the abnormal pap results. (*Id.* at ¶¶ 60–62.) This is the *only* alleged instance of negligence against the defendants who are seeking to be dismissed from the case in the motion at issue here.

### B. Treatment of Deceased After November 3, 1997

Between February 6, 1998 and March 30, 1999 Elliott returned to Southside nine times complaining of prolonged vaginal bleeding, vaginal discharge with an odor, abdominal pain, blood clots and similar symptoms on each occasion. (Pl.'s Original Compl. for Medical Malpractice, attach. as Ex. A to Defendants Motion to Dismiss [20] at ¶¶ 10, 14, 22, 26–34.) It was not until March 31, 1999, that Defendant Sonyika performed a colposcopy and cervical biopsy. (*Id.* at ¶ 35) On April 2, 1999, Defendant Sonyika diagnosed Elliot as suffering from high grade dysplasia. (*Id.* at ¶ 36.)

Elliott died of cervical cancer on April 7, 2000.

## II. PROCEDURAL HISTORY

On March 8, 2001, plaintiff Sharon Simmons, Administrator of the Estate of Trina Elliott, filed her original Complaint in the Superior Court of Fulton County, Georgia, alleging medical malpractice against defendants Sonyika, Kai, and Southside (hereinafter, collectively, the "Southside Defendants"). On July 30, 2001, the Government removed the case to federal court, arguing that plaintiff's claims arising from November 3, 1997 forward are covered by the Federal Tort Claims Act, 28 U.S.C. §§ 2671–2680 (2003) (hereinafter, the "FTCA"), because, as of this date, Southside Healthcare had become a federally supported health center. *See Simmons v. Marine, et al.*, 1:01–CV–2020–CAM at [1]. Moreover, because Southside Healthcare had become a federally supported health center, Southside doctors could no longer be sued in their individual capacities for acts or omissions performed within the scope of their official duties after November 3, 1997. *Id.*

On August 2, 2001, the Government filed a motion to substitute the United States of America as a party for all claims arising from November 3, 1997 forward. *Id.* at [2]. Additionally, the Government filed a motion to dismiss based on plaintiff's failure to exhaust local administrative remedies. *Id.* at [3]. The Honorable Charles A. Moye, the judge and colleague of the undersigned's to whom this original action was assigned, granted both of these motions on February 19, 2002. *(Id.* at [18] and also attached as Ex. 5 to Pl.'s Motion for Joinder of State Claim [7] in this action.) Because all of plaintiff's claims against defendant Marine arose on or after November 3, 1997, the court dismissed all claims against defendant Marine and substituted the Government for his claims and any other claims arising after that date. Plain-

tiff's state law claims against the Southside defendants arising prior to November 3, 1997 were remanded to state court because the federal court lacked subject matter jurisdiction over these claims. Thus, the action against the Southside defendants proceeded in state court: specifically, in the Fulton County Superior Court.

Meanwhile, plaintiff exhausted her administrative remedies with the Department of Health and Human Services on June 15, 2001, and on June 5, 2002, filed a complaint in the United States District Court for the Northern District of Georgia, pursuant to the FTCA: *Simmons v. United States*, 1:02–CV–1535–JEC at [1]. This newly filed action against the federal defendants (that is any defendants who allegedly committed negligent acts after November 3, 1997) was assigned to the undersigned.

The complaint against the "federal" defendants now back on track, on September 6, 2002, plaintiff sought to join with these "federal" claims the claims against the "state" Southside defendants, which claims were still in state court having been remanded back there via Judge Moye's earlier Order. [10][1] This Court convened a conference with counsel for plaintiff, the United States, and the Southside defendants to determine whether such joinder was possible. Upon being advised that the state defendants would be subject to a jury trial, whereas the federal defendant would be entitled to a bench trial, the Court indicated that it would not consider any sort of joint hybrid proceeding requiring two finders of fact. (Tr., Feb 3, 2003 Conference at 20). Moreover, as to the propriety of joinder of the claims, the undersigned, although noting the desirability in trying the case in one proceeding, indicated that the case law suggested that the Court lacked the power to join a state and a federal action. *Id.* at 24–25.[2]

In response to the Court's observation that it would be problematic to join a state action,

1. This cite, and, unless otherwise indicated, any future cites to tabs in the Court record refer to the action before the undersigned: 1:02–CV–1535–JEC.

2. As discussed during the conference, had the prior judge to whom the case was assigned stayed the state claims, or otherwise kept jurisdiction of them while the federal claims were being exhausted, the two "actions" could have

for which no subject matter jurisdiction existed, with a pending federal action, plaintiff's counsel indicated that he would consider "non-suiting" the state case and amending the federal case to add the state Southside defendants. *Id.* at 25–26. In response to the Court's inquiry about the statute of limitations' ramifications of such action, plaintiff indicated his belief that the statute of limitations would not bar such efforts. *Id.* at 26. Counsel for Southside defendants, however, indicated his belief that the statute of limitations would bar such a refiling of the action in federal court, as well as his belief that the statute of limitations was already violated by the action then pending in state court. *Id.* at 27. The conference concluded with the direction that counsel consult with their clients and report back to the Court thereafter with a decision as to how each party wished to proceed. *Id.* at 38–39.

On February 24, 2003, the Court convened a second conference with counsel. Counsel for plaintiff agreed to waive a jury trial were the claims against the state Southside defendants allowed to be brought in federal court. (Tr. of Feb. 24, 2003 Conference at 2.) Counsel for Southside defendants indicated no objection to plaintiff dismissing the state action and amending the federal claim to add the state claims, but reiterated his belief that the state claims suffered from a "fatal" statute of limitations bar. *Id.* at 4. The parties were unable to agree on how to handle the problem and the Court recessed for them to determine how they wished to proceed. *Id.* at 7.

Thereafter, on March 5, 2003, after further response from counsel was tendered to the Court, this Court issued an Order indicating that "with the consent of the defendants, plaintiff would dismiss the State case and amend the complaint in the pending Federal action to assert the same claims previously remanded to State court against Southside." (March 5, 2003 Order [18] at 1.) The Southside defendants were directed to file any

motion to dismiss within ten days after the plaintiff filed an amended complaint. *Id.*

Voluntarily dismissing the state court case, plaintiff filed a first amended complaint [19] against the Government and the Southside defendants on March 11, 2003. On March 27, 2003, the Southside defendants filed the motion to dismiss [20] at issue here. On April 7, 2003, this Court granted the motion for joinder of the state claim, pursuant to 28 U.S.C. § 1367. (April 7, 2003 Order [22] at 1.)

In support of their pending motion to dismiss, the Southside defendants assert two grounds: first, that the claims are time-barred by the statute of repose, pursuant to O.C.G.A. 9–3–71(b) and second, that the claims are time-barred by the statute of limitations, pursuant to O.C.G.A. 9–3–71(a).

## DISCUSSION

### I. MOTION TO DISMISS STANDARD

Under Federal Rule 12(b)(6), a court may dismiss a claim for failure to state a claim upon which relief may be granted. When deciding whether to dismiss a claim under Rule 12(b)(6), a court must construe the complaint in the light most favorable to the plaintiff and accept the plaintiff's allegations of material fact as true. *Beck v. Deloitte & Touche,* 144 F.3d 732, 735 (11th Cir.1998). A court may grant a motion to dismiss if it finds that the plaintiff cannot prove any set of facts consistent with the complaint which would entitle him or her to relief. *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984). Defendants bear "the 'very high burden' of showing that the plaintiff cannot conceivably prove any set of facts that would entitle them to relief." *Beck,* 144 F.3d at 736.

### II. STATUTE OF REPOSE

#### A. Operative Filing Date for Complaint

The Southside defendants [hereinafter "the defendants"] argue that plaintiff did not

---

been easily put back together following exhaustion of federal remedies. (Feb. 14, 2003 Tr. at 25). Plaintiff did not, however, call this potential problem to the attention of the prior court, via a motion to reconsider the Order remanding the state claims.

timely file her claims. These defendants argue that plaintiff filed her complaint against them after the expiration date of both the Georgia statute of limitations and the Georgia statute of repose. Plaintiff has filed three complaints concerning the alleged malpractice occurring in the diagnosis and treatment of the cervical cancer that ultimately resulted in the death of the deceased, Trina Elliott. Therefore, before the Court can assess the merits of the arguments raised in the Southside defendants' motion, it must first determine the operative date from which the statute of repose began to run.

Plaintiff's first complaint was filed on March 8, 2001 in Fulton County Superior Court against Southside Healthcare, Inc. and against various individual healthcare providers who worked at Southside. Also, as noted, defendant United States removed the case to federal court on July 30, 2001. As discussed *supra*, on February 19, 2002, Judge Moye, the federal judge to whom the case was assigned, granted the United States motion to dismiss without prejudice the claims as to it (the post-November 3, 1997 malpractice claims) to allow plaintiff an opportunity to exhaust administrative remedies. Judge Moye then remanded the malpractice claim against the state Southside defendants (pre-November 3, 1997 malpractice claims) to state court. Judge Moye denied as moot the state defendants motion to dismiss, the basis of which motion defendants have indicated to have been a statute of limitations defense. (*Simmons v. Marine*, 1:01–CV–2020–CAM at [8] and [18].)

Then, on June 5, 2002, having exhausted her administrative remedies, plaintiff filed a complaint against the United States alleging malpractice claims arising after November 3, 1997.[1] As noted, this case is assigned to the undersigned. Finally, on March 10, 2003, having dismissed the state action, plaintiff filed the amended complaint, discussed above, in which she joined the pre-November 3, 1997 claims against the Southside defendants with the existing claims against the United States.

Accordingly, there are three possible dates to examine in analyzing whether plaintiff has run afoul of either the statute of limitations or the statute of frauds with regard to her claims against the Southside defendants: **March 8, 2001**, the date that plaintiff filed her original consolidated claim in state court against all defendants; **June 5, 2002**, the date in which the plaintiff filed a complaint against only the federal defendant, after exhausting its remedies as required by the district court; and **March 10, 2003**, the date plaintiff filed the amended complaint again rejoining the claims against the state and federal defendants, which complaint was essentially a refiling of the 2001 complaint.

The parties talk across each other, with plaintiff asserting that the 2001 Complaint sets the date by which any limitations period should be determined and with defendants asserting that the 2003 Amended Complaint creates the operative date. Unfortunately, neither party is terribly explicit as to why their position as to the operative complaint is valid. Accordingly, the Court has been forced to rely on some of its own analysis in considering this matter.

■ At the outset, hornbook law suggests that, when determining whether an amended complaint filed outside the limitations period can be deemed to have been filed when the original timely complaint was filed, one must decide whether the amended complaint "relates back" to the original complaint. " 'Relation back' causes an otherwise untimely claim to be considered timely by treating it as if it had been filed when the timely claims were filed." *Davenport v. United States*, 217 F.3d 1341, 1344 (11th Cir.2000). In order for an amended claim to relate back to the original claim, Fed.R.Civ.P. 15(c)(2) ("Rule 15(c)(2)") provides that "the claim or defense asserted in the amended pleading [must arise] out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading." This rule is permissive, allowing amended complaints to relate back "[a]s long as the amended complaint refers to the same transaction or occurrence that *formed the basis for the original complaint* and the defendant was put on

notice of the claim by the first complaint." *U.S. ex rel. Campbell v. Lockheed Martin Corp.*, 282 F.Supp.2d 1324, 1336 (M.D.Fla.2003)(emphasis added) (quoting *Travelers Ins. Co. v. Brown*, 338 F.2d 229, 234 (5th Cir.1964)). The relation back provision of Rule 15(c)(2) will apply only when no "new or distinct conduct, transactions, or occurrences are alleged as grounds for recovery." *Moore v. Baker*, 989 F.2d 1129, 1131 (11th Cir.1993) (quoting *Holmes v. Greyhound Lines, Inc.*, 757 F.2d 1563, 1566 (5th Cir.1985)).

The Eleventh Circuit disallows a plaintiff's amended complaint to relate back where the alleged acts of negligence in the two claims are different. *See Moore*, 989 F.2d at 1131–32. In *Moore*, the patient's original complaint focused on the doctor's action prior to surgery and the new claim focused on the doctor's actions during and after surgery. The court held that the alleged acts of negligence occurred at different times and did not arise out of the same conduct, transaction or occurrence as the claims in the original complaint. *Id.* Therefore, the new claims did not relate back to the claims alleged in the original complaint.

■ Applying the reasoning behind *Moore*, the Court must conclude that the amendment adding the Southside defendants does not relate back to the 2002 complaint against the federal defendants, which was filed by plaintiff after she exhausted administrative remedies and after the district court had remanded the state claim. This 2002 complaint alleges negligence after November 3, 1997 and does not make any claims for any events before November 3, 1997. (*See* Pl.'s Compl. [1] at ¶¶ 7, 9–44.)[3] Because any claims against the Southside defendants arose before November 3, 1997, the pre-November 3, 1997 claims cannot be said to arise out of the same conduct, transaction, or occurrence set forth in the 2002 complaint. *See Moore*, 989 F.2d at 1132. Accordingly,

this 2002 complaint, considered by itself, could not have given notice to the Southside defendants that these claims would be asserted against them.

The wrinkle in this case, however, is the fact that plaintiff's 2001 complaint, filed in state court and removed by the federal defendant to federal court, gave clear notice to the Southside defendants of the pre-November 3, 1997 claims and indeed is now mimicked by the "amended" 2003 complaint filed by plaintiff. Indeed, but for the district court remanding the state claims after it was determined that plaintiff still had to exhaust her remedies against the federal defendants, the 2001 complaint would clearly be the operative complaint. Moreover, the Southside defendants were not caught unawares by the 2003 complaint as they were aware of these precise claims since the filing of the 2001 complaint and, indeed, they were still named as defendants on these claims, albeit the forum had been changed to state court after the remand by Judge Moye.

Thus, a conclusion that the 2001 complaint is not the operative complaint seems artificial and hypertechnical. Statutes of repose and of limitation, however, are by their nature highly technical and unforgiving in their application, and they sometimes do create results that might be otherwise considered as unfair. More significantly, plaintiff has made no effort to explain to this Court why the 2001 complaint should be considered the operative complaint for purposes of gauging the statute of repose period. Were this Court to study the treatises and decades of precedent on the applicable principles at issue here, it might well come up with a means by which it could conclude that the 2003 complaint could be related back to the 2001 complaint. Such a task would be very time consuming for the Court and it is not the Court's responsibility to undertake this duty. Thus, without some ostensible procedural hook that would allow this Court to use this 2001 complaint as the complaint to which the 2003 complaint could

---

**3.** Of course, there is a good reason for this: the district court had remanded the claims against the state defendants, so it is understandable that

plaintiff did not reallege claims that were the subject of a now-remanded state action.

relate back to, the Court is forced to conclude that the 2003 complaint becomes the operative complaint for purposes of analyzing the statute of repose.[4]

With regard to the 2002 complaint, for the reasons discussed above, the Court is not at liberty to create an exception to the plain language of the relation back rule, Rule 15(c)(2). Rule 15(c)(2) is clear and explicitly requires that the original pleading (the pleading to which the amended pleading is being related) be the vehicle of such notice. Fed.R.Civ.P. 15(c)(2). Like the plaintiff in *Moore,* who limited his original complaint to pre-surgery actions, plaintiff in this case limited her 2002 complaint to post-November 3, 1997 acts or omissions. Accordingly, plaintiff cannot relate the 2003 complaint back to this 2002 complaint. Because the claims against the Southside defendants do not relate back to the June 5, 2002 filing date, the analysis that follows uses the March 10, 2003 Complaint as the date on which the claim was filed.

### B. STATUTE OF REPOSE DEFENSE

The Georgia statute of repose for medical malpractice actions requires that an action be brought within five years of the negligent act or omission. The statute provides that *"in no event* may an action for medical malpractice be brought *more than five years* after the date on which *the negligent or wrongful act* or omission occurred." O.C.G.A. § 9–3–71(b) (emphasis added). Assuming an operative date of March 10, 2003 for plaintiff's complaint against the Southside defendants, the statute of response would allow plaintiff to pursue only those negligent acts committed by defendants that occurred on or after March 10, 1998. The alleged negligent acts of the Southside defendants in this case necessarily occurred before November 3, 1997, however, as the Southside Healthcenter ceased to exist on that date, having been bought out by the federal government. Accordingly, absent some method to allow

plaintiff to assert negligence claims occurring before the March 10, 1998 date—and, in fact, before November 3, 1997—plaintiff's claims against the Southside defendants will be barred by the statute of repose.

Plaintiff's sole argument in opposition to defendants' statute of repose defense is that the tolling provision applicable to an unrepresented estate under O.C.G.A. § 9–3–92, which is clearly applicable in calculating the statute of limitations, is also applicable in calculating the statute of repose period. Section 9–3–92 provides, in relevant part, that "the time between the death of a person and the commencement of representation upon his estate... *shall not* be counted against his estate in calculating *any* limitation applicable to the bringing of an action." O.C.G.A. § 9–3–32 (emphasis added). As 334 days elapsed from the death of Ms. Elliott to the appointment of an administrator of her estate, plaintiff essentially argues that 334 days (or approximately 11 months) should be added to the November 3, 1997 date, for purposes of establishing the start date from which the statute of repose will be counted. Were the Court able to do this, the start date would become around October 3, 1998, which would mean that plaintiff would have had to have filed her complaint against the Southside defendants by October 3, 2003: a date that she clearly met with the filing of the March 2003 Amended Complaint.

■ Unfortunately for plaintiff, however, while this tolling provision can operate to toll the statute of limitations (*see* section III *infra*), this Court concludes that Georgia law does not permit it to toll the statute of repose as "nothing stops the abrogation of the action by the statute of repose; five years after the negligent or wrongful act or omission occurred, despite any non-discovery or any tolling, the medical malpractice action or potential action ceases to exist by abrogation of law under the statute of repose." *Charter Peachford Behavioral Health Sys. v. Kohout,* 233 Ga.App. 452, 456, 504 S.E.2d 514, 521

---

4. But see discussion *infra* at 696 *et seq.* regarding the statute of limitations in which the Court

concludes that the 2001 complaint is the operative complaint.

(1998); *Accord Hanflik v. Ratchford, M.D.,* 848 F.Supp. 1539, 1542–1543 (N.D.Ga.1994) (Carnes J.); *Burns v. Radiology Assocs. of Gwinnett, P.C.,* 214 Ga.App., 76, 77, 446 S.E.2d 788, 789 (1994).

Plaintiff argues, however, that § 9–3–92's provision that the period before a representative for the deceased's estate has been appointed "shall not be counted...in calculating *any* limitation applicable to the bringing of an action" means "any limitation" and therefore applies when construing the statute of repose. Thus, this case presents a novel issue of statutory construction, pitting O.C.G.A. § 9–3–71(b) against O.C.G.A. § 9–3–92. Notwithstanding general rules of statutory construction which require that courts interpret the term "shall" as mandatory, *O'Donnell v. Durham,* 275 Ga. 860, 861, 573 S.E.2d 23, 25 (2002), the Court concludes that the "shall" in § 9–3–92 is trumped by the use of the words "in no event" in the statute of repose: *"in no event* may an action for medical malpractice be brought more than five years after the date on which the negligent or wrongful act or omission occurred." O.C.G.A. § 9–3–71(b) (emphasis added).

▪ Georgia courts have enforced strictly this "in no event" language. Not surprisingly, they have held that the statute of repose bars actions brought after the expiration of the five-year statute of repose, even where the injury occurred more than five years after the alleged medical malpractice. *Braden v. Bell,* 222 Ga.App. 144, 147, 473 S.E.2d 523, 525 (1996) (where an alleged misdiagnosis of cancer occurred in 1984 and the resulting death occurred in 1993, the statute of repose barred any cause of action for medical malpractice or wrongful death filed in 1995). "A statute of repose ... limits the time within which an action may be brought and is not related to the accrual of any cause of action. The injury need not have occurred, much less have been discovered." *Wright v.*

*Robinson,* 262 Ga. 844, 845, 426 S.E.2d 870, 871 (1993). Indeed, the only occasions when the Georgia courts have allowed claims after the tolling of the statute of repose is where the physician has engaged in actual fraud [5] or where the legislature has created explicit exceptions. *See* O.C.G.A. § 9–3–72; O.C.G.A. § 9–3–73; *Abend v. Klaudt,* 243 Ga.App. 271, 531 S.E.2d 722 (2000).

Although this Court is unaware of any case that bears the same procedural history as this case, Georgia courts have disallowed claims in which the plaintiff has run afoul of the statute of repose through procedural missteps, even when the defendant was well aware of the existence of the claim. Thus, Georgia case law clearly holds that a plaintiff cannot voluntarily dismiss a suit and re-file it within the six-month renewal period allowed by O.C.G.A. § 9–2–61(a), regardless of notice of the claims to the defendant, because a reposed action is deemed destroyed. *E.g., Wright v. Robinson,* 262 Ga. 844, 426 S.E.2d 870 (1993); *Miller v. Vitner,* 249 Ga. App. 17, 546 S.E.2d 917 (2001). *Accord Hanflik v. Ratchford,* 848 F.Supp. 1539 (N.D.Ga.1994) (Carnes, J.), *aff'd,* 56 F.3d 1391 (11th Cir.1995). In *Eyzaguirre v. Baker,* 260 Ga.App. 53, 579 S.E.2d 47 (2003), *cert. denied* June 9, 2003, Baker saw his doctor between November, 1992 and July 10, 1993 when he died. On July 24, 1996, the plaintiffs brought an action on behalf of Baker, but then voluntarily dismissed it in May, 1998. Subsequently, on July 10, 1998, the plaintiffs re-filed their action. *Id.* The appellate court, reversing the trial court, concluded that evidence of negligent acts or omissions occurring on or before July 10, 1993 was inadmissible because the statute of repose barred any earlier claims. *Id.* Thus, the appellate court disallowed plaintiff's claims for medical malpractice or wrongful death. *See id.* In short, a defendant's awareness of the claims will not defect the statute of repose.

---

5. The running of the statute of repose can be equitably estopped in a medical malpractice case, however, where the physician has engaged in actual fraud to conceal his tortious injury. *Miller v. Vitner,* 249 Ga.App. 17, 546 S.E.2d 917,

918 (2001). There is no allegation of equitable estoppel in this case, however, and hence no valid argument that the statute of repose may be tolled.

Accordingly, the Court concludes that because the statute of repose expired on November 3, 2002, five years after the last possible act of negligence by the Southside defendants, plaintiff's claims against the Southside defendants are barred. This is a result that this Court finds not very satisfying or fair under the odd procedural facts present here. Plaintiff's negligence claims against the state defendants logically needed to be tried in the same proceeding as the later claims arising against these same individuals once they had become federal employees. Otherwise, it would be very difficult for a finder of fact to identify which act of alleged negligence, occurring during a period of continuous treatment by the same health care providers, was actionable. Through no action of the plaintiff, her state claims were remanded once the United States removed the action to federal court. When plaintiff had exhausted her administrative remedies and refiled this federal action, she logically saw a need to try the two actions together and refiled this state action in federal court. Nevertheless, given the passage of time, which caused the statute of repose to expire, and given the strictness with which Georgia courts view this statute, this Court concludes that it must dismiss the action against the Southside defendants, even though the latter were at all times aware of the existence of the claims and were at all times named defendants in either a state or federal complaint.

Accordingly, the Court **GRANTS** defendants' motion to dismiss defendants Sonyika, Kai, and Southside [20] from this case.

## III. DEFENDANTS' STATUTE OF LIMITATIONS ARGUMENT

Defendants also argue that, even if the statute of repose did not require dismissal of the claims at issue here, the statute of limitations operates as a bar to the claims. This Court disagrees, at least at the motion to dismiss stage of the proceedings.

6. Where the refiling is outside the limitations period, however, the plaintiff may go through

The first question, again, is which of plaintiff's complaints is the operative complaint for purposes of resolving this question. Here, as noted *supra*, plaintiff's initial complaint was filed on March 8, 2001; was removed to federal court thereafter; was then remanded back to state court by the federal court; and was dismissed without prejudice by plaintiff sometime in early March, 2003. Within a few days of this voluntary dismissal, plaintiff filed the amended complaint that is presently pending in this Court and that is the subject of the present motion to dismiss by the Southside defendants.

Under the Georgia "renewal statute," where a plaintiff has commenced an action within the applicable statute of limitations, the plaintiff may dismiss that action and refile again within six months of the dismissal, even if the refiling is now outside the pertinent statute of limitations.[6] O.C.G.A. § 9-2-61(a). Defendant agrees that, while this renewal statute cannot operate to toll the Georgia statute of repose, it can toll the statute of limitations. (Def.'s Mtn. to Dism. [20] at 7). Indeed, by its very terms, the renewal statute allows such a result. Here, in early March, 2003, the plaintiff dismissed its original complaint, which had been filed in state court on March 8, 2001, and refiled this complaint in federal court a few days after the voluntary dismissal. Accordingly, as long as this original 2001 Complaint was filed within the statute of limitations when it was filed on March 8, 2001, it remains timely, for this limitations' purposes, when it was refiled in March, 2003 in this Court. Therefore, this Court turns to the question whether the plaintiff complied with the statute of limitations when she filed her original complaint on March 8, 2001.

Generally, the statute of limitations for medical malpractice actions is two years after the date of injury or death resulting from the negligent acts. O.C.G.A. § 9-3-71(a). In this case, however, this limitations period is extended by the time that it took the estate

this exercise only once. O.C.G.A. § 9-2-61(a).

to have an administrator appointed.[7] That is, contrary to the Court's conclusion concerning the absence of any effect of this estate tolling provision on the statute of repose, Georgia law permits this tolling provision to extend the statute of limitations. *Legum v. Crouch,* 208 Ga.App. 185, 430 S.E.2d 360, 364 (1993). Thus, when the predicate facts exist, the statute indicates that the appropriate time period "shall" be tolled. Further, the statute of limitations provision operates "except as otherwise provided." Courts have interpreted the above language to mean that the tolling provision is calculated into the applicable statute of limitations *Id.*

Because 334 days passed between the date Elliott died, April 7, 2000, and the date that Simmons was appointed as the Administrator of the estate, March 8, 2001, the above tolling provision adds 334 days, or approximately eleven months, to the statute of limitations. Defendants argues that their last conceivable act of negligence had to have occurred by November 3, 1997, because that is the date that the federal authorities took over the facility. Adding two years (the statute of limitations period) and approximately eleven months (the estate tolling period) to that date means that the statute of limitations would have presumptively expired around October 3, 2000. As plaintiff's original complaint against the Southside defendants was not filed until March 8, 2001, defendant argues that even this first complaint was filed approximately five months after the statute of limitations had expired. Thus, absent the existence of a reason to further delay the expiration date for the statute, plaintiff's original complaint would appear to be barred by the applicable statute of limitations. The consequence of such a finding would mean that plaintiff could not avail herself of the renewal statute's saving provision with regard to the statute of limitations; without the renewal statute to fall back on, plaintiff's March, 2003 complaint would clearly fall outside the limitations period.

Plaintiff argues that there is a reason in this case to further extend the statutory period of limitations. Specifically, she argues that, in a medical malpractice case, the statute of limitations begins to run "on the date the injury occurs, if immediately evident, or *when the symptoms of the injury first appear.*" (Pl.'s Resp. [23] at 6) (emphasis added) (citations omitted). Essentially, plaintiff argues that the deceased did not manifest symptoms of her cervical cancer by November 3, 1997: the date on which Southside was taken over by the federal government. Instead, plaintiff contends that the symptoms did not manifest themselves until December 17, 1998, when plaintiff began cramping and suffering lower abdominal pain. *Id.* at 8. If plaintiff is correct, the statute would begin to run on December 17, 1998. Adding two years and eleven months to that date, the statute would have expired around November 17, 2001. As plaintiff filed her original complaint in March, 2001, she would have been well within the statute of limitations.

■ Defendants contend, however, that plaintiff's symptoms of cervical cancer first appeared in January of 1998 when she had vaginal bleeding. (Def.'s Mtn. to Dism. [20] at 12). Plaintiff disagrees that vaginal bleeding for a short 2–3 week period would suggest the existence of cervical cancer. (Pl.'s Resp. [23] at 7–8). As discovery has not yet occurred, this Court cannot determine that plaintiff is wrong in her assertion or that defendants are correct in theirs. In short, this is a factually-dependent dispute that is not the proper subject of a motion to dismiss. As the Court must take the facts and allegations of the Complaint in the light most favorable to the plaintiff, in resolving a motion to dismiss, it therefore must assume that the start date for the running of the statute of limitations is December 17, 1998. As calculated above, plaintiff's original complaint would then have been timely filed and therefore plaintiff's present timely renewal of that

---

7. O.C.G.A. § 9–3–92 provides in relevant part, "[t]he time between the death of a person and the commencement of representation upon his estate ... shall not be counted against his estate in calculating any limitation applicable to the bringing of an action ...."

timely filed action complies with the statute of limitations, albeit not the statute of repose.

## CONCLUSION

For the foregoing reasons, the Court must assume, at the dismissal stage, that plaintiff's action against the Southside defendants complies with the Georgia statute of limitations, but falls outside the Georgia statute of repose. Accordingly, the Court **GRANTS** defendants Sonyika, Kai, and Southside Healthcare, Inc.'s Motion to Dismiss [20] **AND DENIES** Plaintiff's Motion for Oral Argument on the Defendants' Motion to Dismiss [25].